IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
)
JANE DOE, on behalf of herself and      )
Similarly situated others,              )
                                        )
       Plaintiffs,             )
                                        )
       v.                      )    Case No. 1:14-cv-00367-BAH
                                        )
UNITED STATES DEPARTMENT OF             )
EDUCATION, and ARNE DUNCAN, in          )
his official capacity as Secretary of the )
United States Department of Education,  )
                                        )
       Defendants.             )
_____)


**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION ..................................................................................................................1

BACKGROUND ...................................................................................................................2

I.      STATUTORY AND REGULATORY BACKGROUND...................................................2

        A.      Title IX ...................................................................................................................2

        B.      The Clery Act..........................................................................................................5

II.     FACTUAL BACKGROUND ...........................................................................................8

III.    PLAINTIFF'S COMPLAINT...........................................................................................9

STANDARD OF REVIEW .................................................................................................11

ARGUMENT .....................................................................................................................11

I.      ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED
        BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY
        AGAINST UVA ............................................................................................................11

II.     COUNTS III THROUGH VIII SHOULD BE DISMISSED BECAUSE
        THEY ARE NOT RIPE AND PLAINTIFF LACKS STANDING TO
        ASSERT THEM ............................................................................................................14

III.    PLAINTIFF'S MANDAMUS AND APA CLAIMS SHOULD BE
        DISMISSED BECAUSE THE DEPARTMENT IS NOT REQUIRED TO
        RESOLVE COMPLAINTS IN ANY PARTICULAR TIMEFRAME ............................18

IV.     PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED
        BECAUSE PLAINTIFF HAS NOT BEEN DEPRIVED OF ANY LIBERTY
        OR PROPERTY INTEREST PROTECTED BY THE CONSTITUTION......................20

V.      PLAINTIFF'S TITLE IX AND TITLE IV CLAIMS SHOULD BE
        DISMISSED BECAUSE THESE STATUTES DO NOT CONFER ON
        PLAINTIFF A PRIVATE RIGHT OF ACTION AGAINST THE DEPARTMENT .......21

VI.     PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED
        BECAUSE IT DOES NOT STATE A CLAIM UPON WHICH RELIEF
        MAY BE GRANTED ......................................................................................................24

CONCLUSION...................................................................................................................25

i

## TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE(S)**

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)...................................................................................................15

*Alexander v. Sandoval,*
    532 U.S. 275 (2001)...................................................................................................21

*Animal Legal Def. Fund, Inc. v. Espy,*
    23 F.3d 496 (D.C. Cir. 1994) ....................................................................................16

*Apple v. Glenn,*
    183 F.3d 477 (6th Cir. 1999) .....................................................................................24

*Ashcroft v. ACLU,*
    535 U.S. 564 (2002)...................................................................................................25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)...................................................................................................11

*Bd. of Regents of State Colls. v. Roth,*
    408 U.S. 564 (1972)...................................................................................................20

*Bedford v. Univ. of Louisville Sch. of Med.,*
    No. 88-6423, 1989 WL 123143 (6th Cir. Oct. 19, 1989) ..................................................23

*Brown v. Board of Education,*
    347 U.S. 483 (1954)] .................................................................................................23

*Bush v. Lucas,*
    462 U.S. 367 (1983)...................................................................................................14

*Cabais v. Egger,*
    690 F.2d 234 (D.C. Cir. 1982) ..................................................................................17

*Califano v. Sanders*,
    430 U.S. 99 (1977)  ....................................................................................................15

*Cannon v. Univ. of Chi.,*
    441 U.S. 677 (1979)............................................................................................ *passim*

*Chamber of Commerce v. Reich,*
    74 F.3d 1322 (D.C. Cir. 1996) ..................................................................................12

*Chavez v. Martinez,*
    538 U.S. 760 (2003)..................................................................................20

*Clopton v. Dep't of Navy,*
    No. 95-5362, 1996 WL 680189 (D.C. Cir. Oct. 30, 1996) ...............................12

*Coker v. Sullivan,*
    902 F.2d 84 (D.C. Cir. 1990) ..................................................................12, 19

*\*Council of and for the Blind v. Regan,*
    709 F.2d 1521 (D.C. Cir. 1983) ......................................................1, 12, 20, 23

*Cousins v. Dole,*
    674 F. Supp. 360 (D. Me. 1987) ..................................................................14

*Cousins v. U.S. Dep't of Transp.,*
    880 F.2d 603 (1st Cir.1989)........................................................................22

*Davis v. Passman,*
    442 U.S. 228 (1979) ..................................................................................14

*Dep't of the Army v. Blue Fox, Inc.,*
    525 U.S. 255 (1999) ..................................................................................12

*Doe v. U.S. Dep't of Health and Human Serv.,*
    Case No. 1:14-cv-00366-BAH (D.D.C.) ...........................................................9

*Eagle-Picher Indus. v. EPA,*
    759 F.2d 905 (D.C. Cir. 1985) ....................................................................16

*Francis-Sobel v. Univ. of Me.,*
    597 F.2d 15 (1st Cir. 1979)........................................................................21

*Heckler v. Ringer,*
    466 U.S. 602 (1984)............................................................................17, 18

*Jersey Heights Neighborhood Ass'n v. Glendening,*
    174 F.3d 180 (4th Cir. 1999) ................................................................13, 22

*La. Envtl. Action Network v. Browner,*
    87 F.3d 1379 (D.C. Cir. 1996) ....................................................................15

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)..................................................................................15

*Marlow v. U.S. Dep't of Educ.,*
  820 F.2d 581 (2d Cir. 1987), *cert. denied*, 484 U.S. 1044 (1988)....................................22

*Minn. State Bd. for Cmty. Colls. v. Knight,*
  465 U.S. 271 (1984).........................................................................................................24

*NAACP v. Med. Ctr., Inc.,*
  599 F.2d 1247 (3d Cir. 1979)...........................................................................................22

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
  538 U.S. 803 (2003).........................................................................................................17

*Nat'l Treasury Emps. Union v. United States,*
  101 F.3d 1423 (D.C. Cir. 1996).......................................................................................15

\**Nat'l Wrestling Coaches Ass'n. v. U.S. Dep't of Educ.,*
  366 F.3d 930 (D.C. Cir. 2004)................................................................................ *passim*

*Nelson v. B. Simon Hardware Co.,*
  145 F.2d 386 (D.C. Cir. 1944).........................................................................................19

*Norton v. S. Utah Wilderness Alliance,*
  542 U.S. 55 (2004)...........................................................................................................18

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
  523 U.S. 726 (1998) ........................................................................................................15

*Pub. Serv. Comm'n v. Wycoff Co.,*
  344 U.S. 237 (1952).........................................................................................................17

*Russello v. United States,*
  464 U.S. 16 (1983)...........................................................................................................19

*Salvador v. Bennett,*
  800 F.2d 97 (7th Cir. 1986) ............................................................................................22

*Smith v. Ark. State Highway Emps., Local* 1315,
  441 U.S. 463 (1979).........................................................................................................24

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 83 (1998)...........................................................................................................11

*Swann v. Charlotte-Mecklenburg Bd. of Educ.,*
  402 U.S. 1 (1971).............................................................................................................23

*Transohio Sav. Bank v. Dir., Office of Thrift Supervision,*
    967 F.2d 598 (D.C. Cir. 1992) ...................................................................................12

*United States v. Edwards,*
    98 F.3d 1364 (D.C. Cir. 1996) ...................................................................................21

*United States v. Greenwood Mun. Separate Sch. Dist.,*
    406 F.2d 1086 (5th Cir. 1969) .................................................................................. 24

*United States v. Mass. Maritime Acad.,*
    762 F.2d 142 (1st Cir. 1985) .....................................................................................23

*We the People Found., Inc. v. United States,*
    485 F.3d 140 (D.C. Cir. 2007) ..................................................................................24

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ..................................................................................................15

*Women's Equity Action League v. Cavazos ("WEAL),*
    906 F.2d 742 (D.C. Cir. 1990) ........................................................................... *passim*

*Wyo. Outdoor Council v. U.S. Forest Serv.,*
    165 F.3d 43 (D.C. Cir. 1999) ....................................................................................15

## STATUTES

5 U.S.C. § 701-706 ...........................................................................................................10, 12

20 U.S.C. § 1089(c) ...............................................................................................................8

20 U.S.C. § 1092(f).........................................................................................................1, 5, 6

20 U.S.C. § 1681 *et seq.* (2000) ..........................................................................................10

20 U.S.C. § 1682..............................................................................................................3, 18

20 U.S.C. § 1683......................................................................................................................4

28 U.S.C. § 1331....................................................................................................................11

28 U.S.C. § 1361......................................................................................................................9

33 U.S.C. § 1365(a)(2)...........................................................................................................22

42 U.S.C. § 2000, *et seq.*...........................................................................................3, 21, 23

v

42 U.S.C. § 7604 ...............................................................................................................22

Education Amendments of 1972, Pub. L. No. 92-318, Title IX, §§ 901-907,
    86 Stat. 235, 373-75 ..................................................................................................3

Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4,
    § 304(a)(1)(B)(iii), 127 Stat. 54 (2013) ...................................................................6

## RULES AND REGULATIONS

34 C.F.R. § 100.7(a)-(d) .................................................................................................3, 4

34 C.F.R. § 100.8 ..............................................................................................................4

34 C.F.R. § 100.9(a) ........................................................................................................18

34 C.F.R. § 100.71 ............................................................................................................3

## LEGISLATIVE MATERIALS

H.R. Rep. No. 101-518, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3363, 3369........................5

S. 834, 112th Cong. (2011) ..............................................................................................6

## MISCELLANEOUS

Dear Colleague Letter, U.S. Dep't of Educ., April 4, 2011 ......................................................5, 8

ED.gov, Negotiated Rulemaking 2013-2014 Violence Against Women Act (VAWA) ...............7

Implementation of Changes Made to the Clery Act by the Violence Against Women
    Reauthorization Act of 2013, U.S. Dep't of Educ., May 29, 2013 ...............................................8

Not Alone: The First Report of the White House Task Force to Protect Students
    from Sexual Assault, April 2014 .............................................................................................8

Questions and Answers on Title IX and Sexual Violence,
    U.S. Dep't of Educ., April 29, 2014 .............................................................2, 5, 7, 14, 16

Review of Title IX, U.S. Dep't of Educ., Negotiated Rulemaking,
    Violence Against Women Act, January 13, 2014................................................2, 7, 14, 16

Revised Sexual Harassment Guidance: Harassment of Students by School Employees,
    Other Students, or Third Parties, U.S. Dep't of Educ., Jan. 2001 ......................................4

## INTRODUCTION

Plaintiff filed a complaint with the U.S. Department of Education (the "Department"), claiming that the University of Virginia ("UVA") violated Title IX of the Education Amendments of 1972, which prohibits sex discrimination in educational programs and activities receiving federal funding.  The Department is currently investigating plaintiff's complaint as part of an ongoing compliance review of UVA.

Plaintiff filed this action in an effort to dictate the timeframe and manner in which the Department conducts its investigation and resolves her complaint.  The D.C. Circuit, however, has repeatedly rejected similar attempts to compel courts to interfere with or supervise a federal agency's efforts to enforce civil rights statutes, including Title IX.  *See, e.g.*, *Nat'l Wrestling Coaches Ass'n v. U.S. Dep't of Educ.*, 366 F.3d 930, 947 (D.C. Cir. 2004); *Women's Equity Action League v. Cavazos* ("*WEAL*"), 906 F.2d 742, 751 (D.C. Cir. 1990); *Council of and for the Blind v. Regan*, 709 F.2d 1521, 1533 (D.C. Cir. 1983).  In doing so, the D.C. Circuit relied on the existence of a private cause of action for individuals, like plaintiff, to sue educational institutions directly for discrimination, as well as the fact that Congress did not intend to authorize such suits against federal agencies that monitor funding recipients' compliance with civil rights statutes. *See id*.  This binding circuit precedent demands dismissal of plaintiff's case.

Most of plaintiff's claims should be dismissed for the additional reason that they are based on unfounded speculation about the impact of recent amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act"), 20 U.S.C. § 1092(f).  As the name implies, the Clery Act requires colleges and universities that participate in the Federal student financial aid programs to disclose campus crime statistics, fire statistics, and information about campus security policies annually.  Congress recently amended the Clery

Act to add certain reporting requirements for sexual assault, domestic violence, dating violence, and stalking.  Counts III through VIII of plaintiff's complaint are based on the theory that these amendments to the Clery Act also somehow supersede requirements of Title IX.  But plaintiff cites to nothing in the amendments to the Clery Act to support her theory.  Indeed, the Department has publicly disclaimed plaintiff's theory.  *See* Review of Title IX, at 3, U.S. Dep't of Educ., Negotiated Rulemaking, Violence Against Women Act, January 13, 2014, *available at* http://www2.ed.gov/policy/highered/reg/hearulemaking/2012/vawa-reviewoftitle9.pdf ("The requirements of Title IX . . . remain unchanged, and schools must comply with them as before."); Questions and Answers on Title IX and Sexual Violence, at 44, U.S. Dep't of Educ., April 29, 2014, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (explaining that a school's obligations under Title IX were not altered in any way by the recent amendments to the Clery Act).  Despite this reassurance, plaintiff speculates that, in investigating and resolving her complaint against UVA, the Department will apply the purportedly "less protective standards" of the amended Clery Act rather than the requirements of Title IX.  These claims also should be dismissed because plaintiff's unfounded allegations are far too remote and conjectural to state a ripe claim or to establish standing.

For these reasons and others set forth more fully below, this case should be dismissed for lack of subject matter jurisdiction and/or failure to state a claim.

## BACKGROUND

### I.      STATUTORY AND REGULATORY BACKGROUND

#### A.      Title IX

Title IX of the Education Amendments of 1972 prohibits discrimination on the basis of sex in educational programs or activities operated by recipients of Federal financial assistance,

including school districts, colleges, and universities.  *See* Education Amendments of 1972, Pub.

L. No. 92-318, Title IX, §§ 901-907, 86 Stat. 235, 373-75 (codified as amended at 20 U.S.C. §

1681 *et seq*. (2000)).  The statute provides two mechanisms for ensuring compliance with its

mandates.  First, individuals injured by discriminatory practices can bring a cause of action

directly against the discriminating educational institution.  *See Cannon v. Univ. of Chi.*, 441 U.S.

677 (1979).  There is no requirement to file an administrative complaint or exhaust any

administrative remedies before pursuing such an action.  *Id*.  Moreover, the Supreme Court has

"suggest[ed] that Congress considered private suits to end discrimination . . . the proper means

for individuals to enforce [Title IX]."  *WEAL*, 906 F.2d at 751 (relying on *Cannon*, 441 U.S.

677).

Second, federal agencies that disburse federal funds to educational institutions may

ensure compliance with Title IX through voluntary compliance agreements or, if that fails, the

initiation of a process that could lead to the termination of federal funding.  *See* 20 U.S.C. §

1682.  To this end, the Department has established procedures for conducting compliance

reviews and investigating complaints of discrimination.  *See* 34 C.F.R. § 106.71 (incorporating

34 C.F.R. § 100.6-100.11 and pt. 101).[1]  Compliance reviews are conducted "from time to time"

by the Department and consist of reviewing the practices of a particular educational institution to

determine whether it is complying with Title IX.  34 C.F.R. § 100.7(a).  Under the complaint

procedure, any individual who believes he or she has been subjected to discrimination prohibited

by Title IX may file a written complaint with the Department.  34 C.F.R. § 100.7(b).  In either

case—compliance review or complaint—if the Department investigates and determines that the

---

[1] The Department's regulations incorporate the procedural provisions applicable to Title VI of the Civil
Rights Act of 1964 (42 U.S.C. §§ 2000d, 2000d-1), which prohibits discrimination on the basis of race,
color, and national origin in programs and activities receiving Federal financial assistance.  "Title IX was
patterned after Title VI," and thus cases interpreting and applying Title VI are relevant to understanding
Title IX.  *See Cannon*, 441 U.S. at 694.

recipient is not complying with Title IX, the Department may undertake a series of compliance efforts, beginning with voluntary resolution agreements and potentially culminating in the termination of certain funds or referral to the U.S. Department of Justice for appropriate proceedings to enforce Title IX.  34 C.F.R. §§ 100.7(c)—(d), 100.8.

As the Supreme Court has recognized, the Department's complaint procedure "does not allow the complainant to participate in the investigation or subsequent enforcement proceedings."  *See Cannon*, 441 U.S. at 706 n.41.  Moreover, even if enforcement proceedings result in a finding of noncompliance, any resulting voluntary resolution agreement "need not include relief for the complainant."  *Id*.  Finally, although an educational institution has the right to challenge any decision by the Department to terminate funding, 20 U.S.C. § 1683, an individual complainant has no right of action against the Department with respect to the complaint process or the Department's enforcement activities, *see WEAL*, 906 F.2d at 748-50.

For more than a decade, the Department has made clear that sexual harassment of students, including acts of sexual violence against students, is a form of sex discrimination prohibited by Title IX.  *See* Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties, at 2, U.S. Dep't of Educ., Jan. 2001, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/shguide.pdf.  In April 2011, the Department reiterated this longstanding position when it issued a Dear Colleague Letter that explains the specific requirements applicable to student-on-student sexual violence that schools must comply with under Title IX.  *See* Dear Colleague Letter, U.S. Dep't of Educ., April 4, 2011, *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf.  For example, if a school knows or reasonably should know about possible student-on-student sexual violence or other sexual harassment, it must promptly investigate to determine what occurred and

then take appropriate steps to resolve the situation if a hostile environment is found.  *Id*. at 4.

Throughout a school's investigation, the parties must have an equal opportunity to present

relevant witnesses and other evidence.  *Id*. at 11.  And schools must provide equitable grievance

procedures and use a preponderance of the evidence standard in all Title IX proceedings,

including any disciplinary proceedings, for addressing complaints of sexual violence or other

sexual harassment.  *Id*. at 10-11; *see also* Questions and Answers on Title IX and Sexual

Violence, *supra*.

### B.     The Clery Act

The Clery Act requires colleges and universities that participate in the Federal student

financial aid programs to disclose information about their security policies and crimes committed

on or around their campuses.  *See* 20 U.S.C. § 1092(f).  Congress passed the Clery Act in 1990

amid concerns that the proliferation of campus crime created a growing threat to students and

employees.  *See* H.R. Rep. No. 101–518, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3363,

3369.

Under the Clery Act, covered institutions must prepare an annual report and distribute it

to current and prospective students, faculty, and school employees.  *Id*. § 1092(f)(1).  The report

must include, among other things, information about the institution's policies and procedures

relating to campus security, access to campus facilities, campus law enforcement, reporting and

responding to crimes, and emergency response and evacuation; a description of programs

designed to inform students and employees about campus security and the prevention of crimes;

and statistics on the occurrence of certain listed criminal offenses reported to campus security or

local police agencies, including murder, forcible and nonforcible sex offenses, robbery,

aggravated assault, and motor vehicle theft.  *Id*. § 1092(f)(1)(A)—(J).  These crime statistics

must also be reported annually to the Secretary of Education, who makes them available to the public.  *Id*. § 1092(f)(5).

The Clery Act also requires covered institutions to make "timely reports to the campus community" of certain listed crimes that are reported to campus security or local police agencies and that are considered to be a threat to other students and employees.  *Id*. § 1092(f)(3).  This requirement is designed "to assist in the prevention of similar occurrences." H.R. Rep. No. 101–518, at 7 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3363, 3371.

In 2013, Congress reauthorized the Violence Against Women Act, and in doing so made several amendments to the Clery Act.  These amendments—referred to by plaintiff as the Campus SaVE Act[2] and referred to hereinafter as the Clery Act Amendments—add domestic violence, dating violence, and stalking to the list of crimes that must be reported by covered institutions both "timely," under § 1092(f)(3), and as part of the institution's annual report.  *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 304(a)(1)(B)(iii), 127 Stat. 54 (2013).  The amendments also require covered institutions to include additional information about the institution's policies and procedures relating to these newly added crimes. *Id*. § 304(a)(8).  For example, covered institutions must include information about the institution's education programs to promote the awareness of rape, acquaintance rape, domestic violence, dating violence, sexual assault, and stalking; the procedures victims should follow if such an offense occurs; the rights of victims and the institution's responsibilities regarding restraining orders and similar orders of protection; counseling, health, mental health, victim advocacy, legal assistance, and other services available for victims on campus and in the

---

[2] "Campus SaVE Act" was the name of a bill introduced in the Senate in 2011 to amend the Higher Education Act of 1965.  *See* S. 834, 112th Cong. (2011), *available at* http://www.gpo.gov/fdsys/pkg/BILLS-112s834is/pdf/BILLS-112s834is.pdf.  The bill never passed, but portions of it were incorporated into the Violence Against Women Reauthorization Act of 2013.

community; and the procedures for institutional disciplinary action and possible sanctions or protective measures the institution may impose following a final determination regarding these offenses. *Id.*

The Department is currently engaged in a rulemaking to propose regulations implementing the Clery Act Amendments. *See* ED.gov, Negotiated Rulemaking 2013-2014 Violence Against Women Act (VAWA), *available at* http://www2.ed.gov/policy/highered/reg/hearulemaking/2012/vawa.html.  Under Title IV of the Higher Education Act of 1965, as amended, of which the Clery Act is a part, the Department is required to use a negotiated rulemaking process to develop proposed regulations.  In this case, the Department's negotiated rulemaking committee reached consensus on the proposed rules. The Department expects to issue a Notice of Proposed Rulemaking this summer and must issue final rules by November 1, 2014 to have them take effect by July 1, 2015.  20 U.S.C. § 1089(c). At the first negotiating committee session on January 13, 2014, and on the Department's public website since that time, the Department has made clear that "[the Violence Against Women Reauthorization Act of 2013] amends only the Clery Act, which is a separate statute [from Title IX].  The requirements of Title IX, including those set forth in the April 4, 2011 Dear Colleague letter on sexual violence, remain unchanged, and schools must comply with them as before."[3] Review of Title IX, at 3, *supra.*  The Department reiterated its position in Questions and Answers on Title IX and Sexual Violence issued on April 29, 2014.  *See* Questions and Answers on Title IX and Sexual Violence, at 44, *supra.*  In that guidance document, the Department again

---

[3] The Department further explained that "[s]chools' obligations under the Clery Act are centered around collecting and reporting information with respect to campus crime statistics and campus security policies," while "[s]chools' obligations under Title IX are centered around ensuring that students are not discriminated against on the basis of sex [including through sexual violence] in the school's education programs and activities."  Review of Title IX, at 4, *supra.*

explained that a school's obligations under Title IX, as clarified in the April 4, 2011 Dear Colleague Letter, are not altered in any way by the Clery Act Amendments.  *Id.*; *see also* Not Alone: The First Report of the White House Task Force to Protect Students from Sexual Assault, at 4, April 2014, *available* at http://www.whitehouse.gov/sites/default/files/docs/report_0.pdf (same).[4]

## II.    FACTUAL BACKGROUND

Plaintiff alleges that she was sexually harassed and/or assaulted by another student while attending UVA in December 2011.  Compl. ¶ 2.  Plaintiff reported the incident to officials at UVA and, after conducting a hearing on the matter, UVA's Sexual Misconduct Board decided there was no basis to further pursue the matter in June 2012.  *See id.* ¶ 6.

Plaintiff filed a complaint with the U.S. Department of Education's Office for Civil Rights on June 18, 2012 (hereinafter "OCR complaint").  *Id.* ¶ 2, Doc. 1.  The OCR complaint alleges that UVA violated Title IX and Title IV of the Civil Rights Act of 1964 in investigating and resolving plaintiff's allegations of sexual harassment and misconduct.  *See id.* ¶ 2, Doc. 1. Plaintiff asserts that UVA, among other things, failed to promptly and equitably investigate and resolve the matter, destroyed and/or withheld critical photographic evidence of plaintiff's injuries from the Sexual Misconduct Board, failed to gather evidence showing that plaintiff was

---

[4] The first annual security report that is affected by the Clery Act Amendments is due October 1, 2014. *See* Violence Against Women Reauthorization Act of 2013, § 304(a)(8).  This report must have crime statistics for 2013 for the newly added offenses.  *See* Implementation of Changes Made to the Clery Act by the Violence Against Women Reauthorization Act of 2013, U.S. Dep't of Educ., May 29, 2013, *available at* http://ifap.ed.gov/eannouncements/052913ImplementofChangesMade2CleryActViolence AgainstWomenReauthorizationAct2013.html.  The Department's implementing regulations will not be effective until July 1, 2015, but covered institutions are expected to make a good faith attempt to comply with the statutory requirements in the meantime.  *Id.*

substantially incapacitated by rape drugs at the time of the incident, and applied a stricter burden of proof than the applicable preponderance of the evidence standard.[5]  *See id.* ¶ 5, Doc. 1.

The Department responded to plaintiff's OCR complaint on July 27, 2012.  *See id.* ¶ 2, Doc. 2.  The Department noted that it was in the process of conducting a compliance review of UVA to assess whether the university's policies and procedures, and its implementation thereof, ensure the elimination of sexual harassment and sexual violence and whether the university immediately and appropriately responds to reports of sexual harassment and sexual violence.  *Id.*, Doc. 2.  The Department further explained that any remedy obtained as a result of the compliance review would also resolve the allegations in plaintiff's OCR complaint.  *Id.*  Therefore, the Department dismissed plaintiff's OCR complaint and consolidated the allegations raised in it with the pending compliance review of UVA.  *Id.*  That compliance review is still ongoing.  *See id.* ¶ 4.

## III.   PLAINTIFF'S COMPLAINT

Plaintiff filed the instant action on March 6, 2014.  In Counts I and II of the complaint, she alleges that the Department has failed to promptly investigate and resolve her OCR complaint.  She seeks an order, pursuant to the Mandamus Act, 28 U.S.C. § 1361, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701-706, respectively, compelling the Department to investigate and resolve her complaint.  *See* Compl. ¶¶ 51-66, Prayer for Relief.

The remaining counts of the complaint (Counts III through VIII) are based on plaintiff's belief that the Clery Act Amendments somehow supersede or amend portions of Title IX.  *See id.* ¶ 21.  For example, plaintiff notes that under Title IX, schools must apply a preponderance of the evidence standard when adjudicating complaints of sexual violence.  *See id.* ¶ 23.  Plaintiff also

---

[5] Plaintiff also submitted a similar civil rights complaint to the U.S. Department of Health and Human Service's Office for Civil Rights.  That complaint is the subject of a related lawsuit.  *See Doe v. U.S. Dep't of Health and Human Serv.*, Case No. 1:14-cv-00366-BAH (D.D.C.).

notes that the Clery Act Amendments require schools to include in their annual report a statement of the standard of evidence that will be used during institutional conduct proceedings arising from reports of domestic violence, dating violence, sexual assault, and stalking. *See id.* ¶ 23 & n.27. Because the Clery Act Amendments do not specify what the reported standard of evidence should be, plaintiff claims the Clery Act somehow conflicts with Title IX's requirement that schools apply a preponderance of the evidence standard. *See id.* ¶ 23. Along the same lines, because Title IX requires schools to provide for the "equitable" redress of student complaints of sexual violence, but the Clery Act Amendments' reporting requirements do not contain any "equity" language, plaintiff apparently believes the Title IX standard somehow has been amended to authorize inequitable redress. *See id.* ¶ 22.

Plaintiff asserts that these differences and others, *see id.* ¶¶ 25-31, 35-40, mean that her OCR complaint will be resolved by the Department under "inequitable and less protective standards" than the standards that were in effect when plaintiff submitted her OCR complaint, *see id.* ¶ 69. She further contends that her OCR complaint, which is based on alleged sex discrimination in violation of Title IX, will be resolved by the Department under "inequitable and less protective standards" than the standards the Department uses to assess complaints of race, color, and national origin discrimination. *See, e.g.*, *id.* ¶¶ 24, 26, 29, 41. In short, plaintiff claims that, if the Department applies the "inequitable and less protective standards" plaintiff believes the Clery Act Amendments require instead of Title IX's requirements, the Department will violate the Equal Protection Clause, the Due Process Clause, Title IX, Title IV of the Civil Rights Act of 1964, and the First Amendment. *See id.* ¶¶ 67-93, Prayer for Relief.

With respect to Counts III through VIII, plaintiff asserts claims and seeks relief both for herself and "similarly situated others," whom the complaint never clearly defines. *Compare id.* ¶

15 (stating that plaintiff "seeks relief . . . on behalf of all female postsecondary students"), *with id*. ¶ 78, 86 (referring to the OCR "complaints of others," and suggesting that relief is sought for individuals who filed OCR complaints based on sex discrimination under Title IX before the Clery Act Amendments became effective and whose complaints have not been resolved).

## STANDARD OF REVIEW

Defendants move to dismiss the case for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(1), (b)(6).  Plaintiff bears the burden to show subject matter jurisdiction, and the Court must determine whether it has jurisdiction before addressing the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95, 104 (1998).  Under Rule 12(b)(6), "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

## ARGUMENT

### I.    ALL OF PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS AN ADEQUATE REMEDY AGAINST UVA

In Counts I and II, plaintiff seeks an order compelling the Department to complete its investigation of, and to resolve, plaintiff's OCR complaint.  *See* Compl. ¶¶ 51-66.  Plaintiff relies on the Mandamus Act and the APA, respectively.  *Id*.  Counts III through VIII allege violations of various constitutional and statutory provisions, *see id*. ¶¶ 67-93; the only potential waiver of sovereign immunity cited in the complaint for these claims is the APA.[6]  *See id*. ¶ 50.  Because

---

[6] The federal question statute, 28 U.S.C. § 1331, does not provide a waiver of the federal government's sovereign immunity.  *Clopton v. Dep't of Navy*, No. 95-5362, 1996 WL 680189, *1 (D.C. Cir. Oct. 30, 1996).  Neither do Title IX or Title VI.  *See Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) (A waiver of sovereign immunity "must . . . be unequivocally expressed in the statutory text." (quotation omitted)).

relief under the Mandamus Act and the APA is not available where, as here, plaintiff has an adequate remedy, all of plaintiff's claims should be dismissed for lack of jurisdiction.

Mandamus is an "extraordinary remedy" that is available only where, among other limitations, "there is no other adequate remedy available to the plaintiff." *Council of and for the Blind*, 709 F.2d at 1533.  Relief under the APA is similarly limited to circumstances in which "there is no other adequate remedy in a court."  5 U.S.C. § 704.  Although the APA's waiver of sovereign immunity may apply to non-APA claims, *see Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C. Cir. 1996), the waiver "is limited by the adequate remedy bar of § 704," *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 947 (quotation omitted).  *See also Transohio Sav. Bank v. Dir., Office of Thrift Supervision*, 967 F.2d 598, 607 (D.C. Cir. 1992) ("The APA excludes from its waiver of sovereign immunity . . . claims for which an adequate remedy is available elsewhere.").

Courts have repeatedly held that relief against a federal agency is barred under both the Mandamus Act and the APA where the plaintiff can bring suit directly against a regulated entity. *See, e.g.*, *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 945-47; *WEAL*, 906 F.2d at 750-52; *Coker v. Sullivan*, 902 F.2d 84, 88-90 (D.C. Cir. 1990) (dismissing APA claim seeking to compel agency to monitor and enforce state compliance with Emergency Assistance plans because the plaintiffs could bring an action directly against states); *Council of and for the Blind*, 709 F.2d at 1532-33 (dismissing Mandamus Act and APA claims against agency because suits directly against discriminating entities were adequate); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 191-92 (4th Cir. 1999) (dismissing APA claim seeking to compel agency to carry out its supervisory duties under Title VI because the plaintiff could bring a direct action against the funding recipients).

Indeed, the D.C. Circuit's decisions in *WEAL* and *National Wrestling Coaches Association* foreclose plaintiff's claims.  In *WEAL*, the plaintiffs alleged, *inter alia*, that the Department did not "process [Title VI and Title IX] complaints, conduct investigations, issue letters of findings, or conduct compliance reviews as promptly or expeditiously as plaintiffs would like."  *Id.* at 745.  Noting that "[p]laintiffs have implied rights of action against federally-funded institutions to redress discrimination proscribed by Titles VI and IX," the court concluded that this "statutory remedy specifically against the discriminating entity" is "adequate and therefore preclusive of a default remedy under the APA."  *Id.* at 750-51 (quotation omitted).  The court further explained that "a determination that an APA action is barred by another remedy . . . demands the further conclusion that mandamus is not available."  *Id.* at 752.

In *National Wrestling Coaches Association*—a case that also involved alleged violations of Title IX—the D.C. Circuit took the additional step of dismissing the plaintiffs' non-APA claims, including an Equal Protection Clause claim.  *See* 366 F.3d at 936, 947.  The court explained that, "[e]ven under these theories, [the plaintiffs] must depend on the waiver of sovereign immunity in § 702 of the APA."  *Id.* at 947.  "[T]he availability of a private cause of action under Title IX directly against the universities," the court concluded "bars [the plaintiffs'] assertion of non-APA causes of action, because there is no waiver of sovereign immunity where appellants have an adequate alternative remedy in court."  *Id.*

As in *WEAL* and *National Wrestling Coaches Association*, the existence of a cause of action directly against UVA to redress plaintiff's allegations of sex discrimination precludes all of plaintiff's claims.  This case, therefore, should be dismissed for lack of jurisdiction.[7]

---

[7] Even if the APA's adequate remedy limitation were not jurisdictional, but rather, a prerequisite to a cause of action under the APA, plaintiff's claims still would fail.  The existence of a remedy against UVA means that plaintiff would have no cause of action under the APA, or any of the other constitutional or statutory provisions she cites in the complaint.  *See Davis v. Passman*, 442 U.S. 228, 242 (1979)

## II.   COUNTS III THROUGH VIII SHOULD BE DISMISSED BECAUSE THEY ARE NOT RIPE AND PLAINTIFF LACKS STANDING TO ASSERT THEM

In Counts III through VIII, plaintiff alleges that the Department will violate certain constitutional and statutory provisions if it investigates and resolves her OCR complaint (and the complaints of unidentified others) using the purportedly "inequitable and less protective standards" plaintiff believes the Clery Act Amendments now require, instead of the requirements of Title IX.  *See* Compl. ¶¶ 67-93.  Plaintiff asserts that her equal protection rights may be "threatened" if the Department subjects her OCR complaint to different standards than it applies to complaints of discrimination based on race, color, and national origin.  *Id*. ¶ 69.  Plaintiff also claims that her due process rights as well as Titles IX and IV may be violated if the Department resolves her OCR complaint under the "less protective standards" of the Clery Act Amendments. *Id*. ¶ 78; *see id*. ¶¶ 71-79, 84-93.  And, plaintiff speculates that, if these purportedly less protective standards are applied, fewer individuals will feel comfortable reporting violence against women, violating the First Amendment rights to speech and to petition the government for redress of grievances.  *See id*. ¶¶ 81-82.  These claims of possible, future harm—aside from being wholly unfounded, *see supra* pp. 7-8 (citing Review of Title IX; Questions and Answers on Title IX and Sexual Violence), and barred by sovereign immunity, *see supra* Argument I—are far too speculative to be justiciable.

"An Article III court cannot entertain the claims of a litigant unless that party has demonstrated . . . standing and unless its claim[s] [are] . . . ripe."  *La. Envtl. Action Network v. Browner*, 87 F.3d 1379, 1381 (D.C. Cir. 1996) (internal citation omitted).  To establish standing,

---

(implying right of action under Due Process Clause where plaintiff had "no effective means" to enforce her rights); *infra* Argument V.  Moreover, plaintiff cannot avoid the adequate remedy limitation in the APA by captioning her challenge to agency action as a claim brought directly under various statutory and constitutional provisions. *See, e.g.*, *Bush v. Lucas*, 462 U.S. 367 (1983); *Cousins v. Dole*, 674 F. Supp. 360, 363 (D. Me. 1987).

a plaintiff must show that she has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "[T]he injury alleged cannot be conjectural or hypothetical, remote, speculative, or abstract." *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal citations and quotations omitted). Allegations of possible future injury also do not suffice; rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (quotation omitted).

Ripeness "shares the constitutional requirement of standing that an injury in fact be certainly impending." *Nat'l Treasury Emps. Union*, 101 F.3d at 1427. In addition, ripeness has a prudential component, wherein the court evaluates both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99, 105 (1977). "The Supreme Court has elaborated upon these requirements, concluding that courts must consider '(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented.'" *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49-50 (D.C. Cir. 1999) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)). The "primary focus" of the prudential aspect of the ripeness doctrine is to balance "the petitioner's interest in prompt consideration of allegedly unlawful agency action against the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests

in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Eagle–Picher Indus. v. EPA*, 759 F.2d 905, 915 (D.C. Cir. 1985).

Plaintiff cannot satisfy any of these jurisdictional requirements for Counts III through VIII. Plaintiff has not alleged any actual injury with respect to these claims. The claims are based not on what has happened to plaintiff, but rather, on what she speculates may happen to her (and others) in the future *if* the Department resolves her OCR complaint in a certain way. Plaintiff also has not shown that her purported future injury is in any way imminent. She believes that the Clery Act Amendments may have superseded certain requirements of Title IX, but she makes no allegations to demonstrate that the Department sees it that way. Indeed, the Department's public statements on the matter have been to the contrary. *See* Review of Title IX, at 2-4, *supra*; Questions and Answers on Title IX and Sexual Violence, at 44, *supra*; *see also Animal Legal Def. Fund, Inc. v. Espy*, 23 F.3d 496, 500 (D.C. Cir. 1994) (The "underlying purpose of the imminence requirement is to ensure that the court in which suit is brought does not render an advisory opinion in a case in which no injury would have occurred at all." (quotation omitted)). Plaintiff's claim that the Clery Act Amendments conflict with Title IX's requirement that schools use a preponderance of the evidence standard, for example, is a legal assertion unsupported by any factual allegations. It ignores that a funding recipient can comply with both statutes by using a preponderance of the evidence standard in disciplinary proceedings regarding Title IX complaints and by stating this standard in the annual report required by the Clery Act. Plaintiff, therefore, has not demonstrated that her alleged injury is more than unfounded conjecture.

Prudential considerations also warrant dismissal of plaintiff's claims. The Department is currently investigating the allegations in plaintiff's OCR complaint as part of its ongoing

16

compliance review of UVA.  The Department has not reached a final decision, and judicial interference at this stage would merely interfere with the agency's administrative process.[8]  *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (explaining that the ripeness doctrine "protect[s] the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties"); *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 244 (1952) (noting that a case cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them").  Intervention by the court at this stage would also interfere with the Department's ongoing rulemaking to implement the Clery Act Amendments—a process that may resolve plaintiff's concerns.  *See Nat'l Park Hospitality Ass'n*, 538 U.S. at 807 (observing that courts should not "entang[e] themselves in abstract disagreements over administrative policies").

Finally, plaintiff will suffer no hardship from denial of review, as she has an adequate remedy against UVA.  In any such action, plaintiff is free to argue that the requirements of Title IX, including those set forth in the April 4, 2011 Dear Colleague Letter, apply to her allegations of sex discrimination and that the purported requirements of the Clery Act Amendments do not. *See Cabais v. Egger*, 690 F.2d 234, 240 (D.C. Cir. 1982) (concluding claims were not ripe where plaintiff had another adequate remedy).  For these additional reasons, Counts III through VIII should be dismissed for lack of jurisdiction.

---

[8] Even a final decision by the Department on plaintiffs' OCR complaint is not reviewable for the reasons explained *supra* Argument I, *infra* Arguments IV, V, VI, and in *Heckler v. Ringer*, 466 U.S. 602 (1984).

III.   **PLAINTIFF'S MANDAMUS AND APA CLAIMS SHOULD BE DISMISSED BECAUSE THE DEPARTMENT IS NOT REQUIRED TO RESOLVE COMPLAINTS IN ANY PARTICULAR TIMEFRAME**

As explained above, Counts I and II seek an order pursuant to the Mandamus Act and the APA, respectively, compelling the Department to resolve plaintiff's OCR complaint.  *See* Compl. ¶¶ 51-66.  These claims should be dismissed for the additional reason that the Department does not have a legal duty to resolve OCR complaints in any particular timeframe.

Mandamus jurisdiction is available "only if the defendant owes . . . a clear nondiscretionary duty" to the plaintiff.  *Heckler*, 466 U.S. at 616.  Similarly, a claim under the APA to compel agency action unreasonably delayed can proceed "only where a plaintiff asserts that an agency failed to take [an action] that it is *required to take*."  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004).  This limitation ensures that the action a plaintiff seeks to compel is "demanded by law," and not merely within the agency's discretion.  *Id.* at 64-65.

Plaintiff cannot satisfy the requirements of either statute, because Title IX and its implementing regulations do not establish any timeframe within which the Department must resolve OCR complaints.  Indeed, plaintiff acknowledges as much.  *See* Compl. ¶ 7 (acknowledging that the Department is "not subject to a specific mandatory timeframe within which [OCR] complaints must be resolved").  The absence of any such time limits – particularly where, as here, Congress and the Department have demonstrated that they know how to impose them when they want to, *see* 20 U.S.C. § 1682 (providing that decision by federal agency to terminate funding is not effective until 30 days after the agency provides a written report to the appropriate congressional committee); 34 C.F.R. § 100.9(a) (requiring the Department to provide a recipient that may have certain federal funds terminated at least 20 days after notification to request a hearing) – demonstrates that the pace at which the Department resolves OCR

18

complaints is completely discretionary. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). In short, the action plaintiff seeks to compel is a quintessential exercise of discretion that cannot be required under the Mandamus Act or the APA.

The Department has not failed to act on plaintiff's OCR complaint. The Department consolidated plaintiff's complaint with its more comprehensive compliance review of UVA. *See* Compl., Doc. 2. That compliance review—which is assessing UVA's policies and practices in responding to reports of sexual harassment and sexual violence, along with the specific allegations in plaintiff's OCR complaint—is under investigation. In *Coker v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990), the D.C. Circuit refused to interfere with a federal agency's monitoring and enforcement duties under the Aid to Families with Dependent Children program. The court explained that "the regulations governing [the agency's] reviews and audits do not impose any specific schedule or time frame on the Department." *Id*. at 89. The court dismissed the plaintiffs' APA claim, noting that the court "should not steer the Department's resources and shape its priorities when [it] lack[s] knowledge of the matters competing for the Department's attention." *Id*. The same is true here. Accordingly, Counts I and II should be dismissed for this reason as well.[9]

---

[9] Counts I and II also could be read as requesting only that plaintiff's OCR complaint be decided before March 7, 2014. *See, e.g.*, Compl. ¶ 61, Prayer for Relief. If that is what plaintiff intended, the claims are moot. *See Nelson v. B. Simon Hardware Co.*, 145 F.2d 386, 387 (D.C. Cir. 1944).

**IV.   PLAINTIFF'S DUE PROCESS CLAIMS SHOULD BE DISMISSED BECAUSE PLAINTIFF HAS NOT BEEN DEPRIVED OF ANY LIBERTY OR PROPERTY INTEREST PROTECTED BY THE CONSTITUTION**

Counts IV and V allege violations of substantive and procedural due process.  *See* Compl. ¶¶ 71-79.  Specifically, plaintiff claims that the Department's delay in processing her OCR complaint will result in the complaint being evaluated under the purportedly less protective standards of the Clery Act Amendments.  *See id.*  Because plaintiff does not assert that the Department's actions have deprived her of any liberty or property interest, these allegations do not state a claim for which relief may be granted (aside from being nonjusticiable, *see supra* Arguments I, II).

The threshold question in any claim for denial of substantive or procedural due process is whether the plaintiff was deprived of a liberty or property interest protected by the U.S. Constitution.  *Chavez v. Martinez*, 538 U.S. 760, 775 (2003); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569-70 (1972).  The D.C. Circuit has made clear that "an agency's failure to process discrimination complaints in the manner required by [Title IX] does not deprive complainants of constitutional rights."  *WEAL*, 906 F.2d at 752 (dismissing due process claim based on agency's purported shortcomings in responding to Title IX OCR complaints and enforcing compliance with Title IX).  This is because an "[agency's] failure to process [individuals'] complaints does not *extinguish* their rights under the [statute], it merely denies them the assistance of the [agency] in vindicating those rights."  *Council of and for the Blind*, 709 F.2d at 1533.  To state a cognizable due process claim, a plaintiff "must allege more than the deprivation of the *expectation* that the agency will carry out its duties."  *Id*. at 1534.  Otherwise, "courts[] would be swamped with constitutional claims because every agency deviation from the statutory norm would raise constitutional questions."  *Id.*

20

As in *WEAL*, plaintiff's due process claims should be dismissed because she has not

alleged that the Department deprived her of any liberty or property interest.  *See also Council of*

*and for the Blind*, 709 F.2d at 1533 (dismissing similar due process claim in the context of

another statute that authorized agency to monitor regulated entities' compliance with

nondiscrimination provisions); *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 18 (1st Cir. 1979)

(same).[10]

## V.    PLAINTIFF'S TITLE IX AND TITLE IV CLAIMS SHOULD BE DISMISSED BECAUSE THESE STATUTES DO NOT CONFER ON PLAINTIFF A PRIVATE RIGHT OF ACTION AGAINST THE DEPARTMENT

Plaintiff alleges, in Counts VII and VIII, that the Department will violate Title IX and

Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000c, *et seq*., if it evaluates her OCR

complaint (and the complaints of others) under the purportedly "less protective legal standards"

that plaintiff believes are required by the Clery Act Amendments.  *See* Compl. ¶¶ 84-93.  These

claims fail for the additional reason that neither Title IX nor Title IV provide plaintiff with a

private right of action against the Department with respect to its enforcement activities.

"[P]rivate rights of action to enforce federal law must be created by Congress."

*Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "The judicial task is to interpret the statute

Congress has passed to determine whether it displays an intent to create not just a private right

but also a private remedy."  *Id*.  "Statutory intent on this latter point is determinative."  *Id*.

In *Cannon*, 441 U.S. 677, the Supreme Court addressed whether Congress intended to

create a private right of action under Title IX in favor of individuals injured by discriminatory

practices directly against the discriminating educational institution.  In concluding that it did, the

---

[10] Plaintiff's due process and equal protection claims (Counts III, IV, and V), which purportedly are brought pursuant to the Fourteenth Amendment to the U.S. Constitution, *see* Compl. ¶¶ 68, 72, 76, also should be dismissed because "the [F]ourteenth [A]mendment does not apply to the federal government." *United States v. Edwards*, 98 F.3d 1364, 1368 (D.C. Cir. 1996).

Court expressed skepticism that a similar private right of action exists against the federal government.  *See Cannon*, 441 U.S. at 706–07 n.41, 715 (observing that the statute "appears to have been a compromise aimed at protecting individual rights without subjecting the Government to suits" and noting that suits against federal agencies would be "disruptive" of agencies' "efforts efficiently to allocate [their] enforcement resources under Title IX"); *see also WEAL*, 906 F.2d at 750 (explaining that the Supreme Court "found strong support in [the] legislative history" of Title VI and IX for "suit[s] against a discriminatory fund recipient to terminate the offending discrimination," "but resistance on the part of lawmakers toward" "suit[s] against the government to terminate federal funding").

Relying on *Cannon*, the D.C. Circuit subsequently determined that Title IX does not create a private right of action against the government with respect to its enforcement activities. *WEAL*, 906 F.2d at 748-50.  A suit against the federal monitors that bypasses the discriminatory recipients, the court explained, is inconsistent with Congress's intent.[11]  *Id.* at 750; *see also Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 946 ("[T]here is no legislation pursuant to which agency actions under Title IX are made reviewable by statute."); *Jersey Heights Neighborhood Ass'n*, 174 F.3d at 191 (refusing to imply a private right of action against the federal government under Title VI; "We do not think Congress intended . . . individuals to circumvent [the] administrative scheme [for federal agencies to secure voluntary compliance or to terminate funds] through direct litigation against federal agencies.").  Congress knows how to create suits directly against

---

[11] Other courts have reached the same conclusion with respect to Title VI, on which Title IX was modeled, and with respect to other statues, like Title IX, that were patterned after Title VI.  *See NAACP v. Med. Ctr., Inc.*, 599 F.2d 1247, 1254 n.27 (3d Cir. 1979) (no right of action against agency in Title VI); *Cousins v. U.S. Dep't of Transp.*, 880 F.2d 603, 607 (1st Cir.1989) (no right of action authorized by section 504 of the Rehabilitation Act of 1973, which was modelled after Title VI); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 583 (2d Cir. 1987) (same), *cert. denied*, 484 U.S. 1044 (1988); *Salvador v. Bennett*, 800 F.2d 97, 99 (7th Cir. 1986) (same).

a federal agency when it wishes to do so.  *See, e.g.*, 33 U.S.C. § 1365(a)(2) (1976) (Federal

Water Pollution Control Amendments of 1972); 42 U.S.C. § 7604 (Supp. V 1981) (Clean Air

Act Amendments of 1970).  Thus, courts "are . . . hesitant to infer that Congress has authorized

such suits when," as here, "it did not expressly say so."  *Council of and for the Blind*, 709 F.2d at

1531, n.69.  For these reasons, plaintiff has no right of action against the Department under Title

IX.

 Title IV also does not create a private right of action against the Department.  Title IV

was enacted "to define the role of the Federal Government in the implementation of [*Brown v.

Board of Education*, 347 U.S. 483 (1954)]."  *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402

U.S. 1, 16-17 (1971).  It authorizes the Secretary of Education to provide assistance to local

school boards in the preparation of desegregation plans, to arrange "training institutes" for school

personnel involved in desegregation efforts, and to make grants directly to schools to ease the

transition to desegregated schools.  42 U.S.C. §§ 2000c-2, 2000c-4.  In 1972, the statute's

definition of "desegregation" was expanded to include discrimination based on sex.  *See United

States v. Mass. Maritime Acad.*, 762 F.2d 142, 145 n.2 (1st Cir. 1985).

 Nothing in Title IV or its legislative history suggests any intent on the part of Congress to

provide to individuals claiming to be injured by discriminatory practices the right to sue the

Department for any reason, much less for its handling of OCR complaints.  Indeed, Title IV does

not create any cause of action on behalf of individuals; it merely "preserves private rights of

action under other civil rights acts."  *Bedford v. Univ. of Louisville Sch. of Med.*, No. 88-6423,

1989 WL 123143, at *3 (6th Cir. Oct. 19, 1989).  Accordingly, plaintiff's Title IV claim also

must be dismissed.[12]

---

[12] Title IV authorizes the Attorney General, in specified circumstances, to initiate suits to end
discriminatory school practices.  42 U.S.C. § 2000c-6.  The Attorney General is not named as a defendant

**VI.    PLAINTIFF'S FIRST AMENDMENT CLAIM SHOULD BE DISMISSED BECAUSE IT DOES NOT STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

In Count VI, plaintiff alleges that the Department violated her First Amendment rights to free speech and to petition the government for redress of grievances by failing to resolve her OCR complaint as quickly as she would like.  *See* Compl. ¶¶ 81-82.  She also contends that the "less protective and more burdensome standards" purportedly required by the Clery Act Amendments "will inhibit the reporting of matters involving violence against women."  *Id.* These allegations should be dismissed for the additional reason that they fail to state a claim upon which relief may be granted.

Plaintiff does not allege that she was denied the right to file an OCR complaint.  Indeed, she did so on June 18, 2012.  Compl. ¶ 2.  Plaintiff is merely unhappy with the Department's response to her OCR complaint.  But the First Amendment right to petition does not guarantee "a government response to or official consideration of a petition for a redress of grievances."  *We the People Found., Inc. v. United States*, 485 F.3d 140, 143-44 (D.C. Cir. 2007); *see Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 286-87 (1984); *Smith v. Ark. State Highway Emps., Local* 1315, 441 U.S. 463, 465 (1979) ("The public employee surely can associate and speak freely and petition openly . . . , [b]ut the First Amendment does not impose any affirmative obligation on the government to listen [or] to respond[.]"); *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999) (concluding that plaintiff who alleged public officials violated his First Amendment right to petition the government by not responding to his letters or taking the actions requested therein failed to state a claim).

---

in this action, and, in any event, the statute does not create any cause of action against the Attorney General either.  *See, e.g.*, *United States v. Greenwood Mun. Separate Sch. Dist.*, 406 F.2d 1086, 1089-90 (5th Cir. 1969).

Plaintiff's speculation about the possible effects the Clery Act Amendments may have on reports of sexual violence also is not actionable.  The First Amendment prohibits laws "abridging the freedom of speech," which, "as a general matter . . . means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573 (2002) (quotation omitted).  Plaintiff, however, does not allege that the Clery Act Amendments regulate her speech (or the speech of other students) in any way.  A provision that does not regulate, restrict, or limit speech cannot violate the First Amendment.  *Id.*

## <u>CONCLUSION</u>

For these reasons, this Court should grant the Department's motion to dismiss this case.

Respectfully submitted this 20th day of May, 2014,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

SHEILA M. LIEBER
Deputy Director

 s/ Michelle R. Bennett                      _
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7310
Washington, D.C. 20530
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*