IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————

|                                                                   |     |                              |
| ----------------------------------------------------------------- | --- | ---------------------------- |
|                                                                   | )   |                              |
| JANE DOE, on behalf of herself and                                | )   |                              |
| similarly situated others,                                        | )   |                              |
|                                                                   | )   |                              |
| Plaintiffs,                                                       | )   |                              |
|                                                                   | )   |                              |
| v.                                                                | )   | Case No. 1:14-cv-00367-BAH   |
|                                                                   | )   |                              |
| UNITED STATES DEPARTMENT OF                                        | )   |                              |
| EDUCATION, and ARNE DUNCAN, in                                    | )   |                              |
| his official capacity as Secretary of the                         | )   |                              |
| United States Department of Education,                            | )   |                              |
|                                                                   | )   |                              |
| Defendants.                                                       | )   |                              |

—————————————————————

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**PAGE**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................3

I.      PLAINTIFF'S FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF
        THE CLERY ACT AMENDMENTS IS NOT PROPERLY PRESENTED AND,
        IN ANY EVENT, SHOULD BE DISMISSSED FOR LACK OF JURISDICTION
        AND FAILURE TO STATE A CLAIM ...........................................................................3

II.     THE EXISTENCE OF A CAUSE OF ACTION DIRECTLY AGAINST
        UVA PRECLUDES ALL OF PLAINTIFF'S CLAIMS AGAINST THE
        DEPARTMENT.................................................................................................................6

III.    PLAINTIFF'S CLAIMS OF POSSIBLE, FUTURE HARM ARE FAR TOO
        SPECULATIVE TO BE JUSTICIABLE .........................................................................10

IV.     THE DEPARTMENT CANNOT BE COMPELLED TO RESOLVE CIVIL
        RIGHTS COMPLAINTS WITHIN A PARTICULAR TIMEFRAME ...........................13

V.      THE DEPARTMENT'S ALLEGED FAILURE TO PROCESS PLAINTIFF'S
        OCR COMPLAINT IN THE MANNER PLAINTIFF WOULD LIKE DOES
        NOT DEPRIVE HER OF A LIBERTY INTEREST.........................................................17

VI.     NEITHER TITLE IX NOR TITLE IV PROVIDES PLAINTIFF WITH A
        PRIVATE RIGHT OF ACTION AGAINST THE DEPARTMENT ...............................18

VII.    PLAINTIFF'S FREE SPEECH CLAIM FAILS BECAUSE THE CLERY
        ACT DOES NOT REGULATE PLAINTIFF'S SPEECH .................................................19

CONCLUSION.......................................................................................................................21

## TABLE OF AUTHORITIES

**CASES**                                                               **PAGE(S)**

*A.N.S.W.E.R. Coal. v. Salazar,*
   915 F. Supp. 2d 93 (D.D.C. 2013) ................................................................................4

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967) ......................................................................................................12

*Adams v. Richardson,*
   356 F. Supp. 92 (D.D.C. 1973) ...................................................................................18

*Adams v. Richardson,*
   480 F.2d 1159 (D.C. Cir. 1973) ..................................................................................18

*Bolden v. City of Topeka,*
   441 F.3d 1129 (10th Cir. 2006) .....................................................................................9

*Cabais v. Egger,*
   690 F.2d 234 (D.C. Cir. 1982) ....................................................................................13

*Calcano-Martinez v. INS,*
   232 F.3d 328 (2d Cir. 2000) ...........................................................................................9

*Cannon v. University of Chicago,*
   441 U.S. 677 (1979) ............................................................................................7, 9, 18

*Chavez v. Martinez,*
   538 U.S. 760 (2003) ......................................................................................................18

*Coker v. Sullivan,*
   902 F.2d 84 (D.C. Cir. 1990)] ..............................................................................7, 13

*Conyers v. Reagan,*
   765 F.2d 1124 (D.C. Cir. 1985) ..................................................................................10

*In re Core Commc'ns,*
   531 F.3d 849 (D.C. Cir. 2008) ....................................................................................16

*Council of and for the Blind v. Regan,*
   709 F.2d 1521 (D.C. Cir. 1983) .......................................................................7, 17, 18

*Davis v. Monroe Cnty. Bd. of Educ.,*
   526 U.S. 629 (1999) ........................................................................................................5

*Doe v. Va. Dep't of State Police,*
   713 F.3d 745 (4th Cir. 2013) ............................................................4

*Donahoe v. Arpaio,*
   869 F. Supp. 2d 1020 (D. Ariz. 2012) ...............................................3

*Douglas v. City of Jeannette,*
   319 U.S. 157 (1943)........................................................................20

*FCC v. League of Women Voters,*
   468 U.S. 364 (1984)........................................................................20

*\*Garcia v. Vilsack,*
   563 F.3d 519 (D.C. Cir. 2009) .............................................1, 7, 8, 15

*Gas Pipeline Co. v. FERC,*
   736 F.2d 747 (D.C. Cir. 1984) ..........................................................11

*Grynberg v. ENI S.P.A.,*
   503 F. App'x 42 (2d Cir. 2012) ...........................................................3

*Heckler v. Cheney,*
   470 U.S. 821 (1985)........................................................................17

*Heckler v. Ringer,*
   466 U.S. 602 (1984)........................................................................17

*Hopkins v. Women's Div., Gen. Bd. of Global Ministries,*
   238 F. Supp. 2d 174 (D.D.C. 2002) ..................................................19

*Hornbeck Offshore Transp., LLC v. U.S. Coast Guard,*
   No. Civ.A. 04-1724(CKK), 2006 WL 696053 (D.D.C. Mar. 20, 2006)..........................19

*Hygrade Provision Co. v. Sherman,*
   266 U.S. 497 (1925)........................................................................20

*In re Interbank Funding Corp. Sec. Litig.,*
   629 F.3d 213 (D.C. Cir. 2010) ............................................................3

*Kansas v. United States,*
   214 F.3d 1196 (10th Cir. 2000) ..........................................................5

*Laird v. Tatum,*
   408 U.S. 1 (1972)............................................................................20

*Legal Servs. Corp. v. Velazquez,*
     531 U.S. 533 (2001)................................................................20

*Lujan v. Defenders of Wildlife,*
     504 U.S. 555 (1992)..................................................................4

*Marlow v. U.S. Dep't of Educ.,*
     820 F.2d 581 (2d Cir. 1987)...................................................17

*Media Access Project v. FCC,*
     883 F.2d 1063 (D.C. Cir. 1989).................................................4

*Nat'l Mining Ass'n v. Mine Safety & Health Admin.,*
     599 F.3d 662 (D.C. Cir. 2010)................................................16

*National Wrestling Coaches Association v. Department of Education,*
     366 F.3d 930 (D.C. Cir. 2004)...............................................8, 9

*Neb. Press Ass'n v. Stuart,*
     427 U.S. 539 (1976)................................................................20

*Oklahoma v. Civil Serv. Comm'n,*
     330 U.S. 127 (1947) .................................................................5

*Pub. Citizen Health Research Grp. v. Comm'r,*
     740 F.2d 21 (D.C. Cir. 1984)..................................................16

*Scenic America, Inc. v. U.S. Department of Transportation,*
     983 F. Supp. 2d 170 (D.D.C. 2013) ..........................................8

*Sherman v. Black,*
     315 F. App'x 347 (2d Cir. 2009) ............................................17

*South Dakota v. Dole,*
     483 U.S. 203 (1987)...............................................................2, 5

*Sprint Spectrum L.P. v. City of Carmel,*
     361 F.3d 998 (7th Cir. 2004) ....................................................9

*Susan B. Anthony List v. Driehaus,*
     No. 13-193, 2014 WL 2675871 (June 16, 2014) .......................10

*Telecommunications Research and Action Center v. FCC ("TRAC),*
     750 F.2d 70 (D.C. Cir. 1984) ......................................... *passim*

iv

*Terrace v. Thompson,*
    263 U.S. 197 (1923)....................................................................................20

*United States v. Butler,*
    297 U.S. 1 (1936)........................................................................................6

*United States v. Lipscomb,*
    299 F.3d 303 (5th Cir. 2002) ......................................................................6

*United States v. Morrison,*
    529 U.S. 598 (2000)....................................................................................6

*Wash. State Grange v. Wash. State Republican Party,*
    552 U.S. 442 (2008)................................................................................2, 4

*Weaver's Cove Energy, LLC v. Allen,*
    587 F. Supp. 2d 103 (D.D.C. 2008) ..........................................................11

*\*Women's Equity Action League v. Cavazos ("WEAL),*
    906 F.2d 742 (D.C. Cir. 1990) ........................................................ *passim*

## STATUTES

20 U.S.C. § 1092(f)........................................................................................5, 9

Violence Against Women Reauthorization Act of 2013,
    Pub. L. No. 113-4, § 304(a)(1)(B)(iii), 127 Stat. 54 (2013) .................................6

## RULES AND REGULATIONS

34 C.F.R. § 100.7(c)........................................................................................13

79 Fed. Reg. 35,418 ....................................................................................2, 11

## MISCELLANEOUS

*Activists applaud White House effort to fight campus rapes*, Washington Post
    (Jan. 25, 2014) ..........................................................................................14

*Changes to Campus Safety Rules*, InsideHigherEd.com (June 20, 2014) ......................14

Dear Colleague Letter, U.S. Dep't of Educ., April 4, 2011..........................................14

Questions and Answers on Title IX and Sexual Violence, U.S. Dep't of Educ.,
    April 29, 2014 ..........................................................................................14

## <u>INTRODUCTION</u>

Plaintiff's opposition to the U.S. Department of Education's ("Department") motion to dismiss demonstrates that plaintiff is indeed seeking to have this Court dictate the timeframe and manner in which the Department resolves plaintiff's pending civil rights complaint ("OCR complaint").  Plaintiff wants an order compelling the Department to complete its investigation by a certain date and instructing the Department to apply Title IX of the Education Amendments of 1972 ("Title IX"), instead of the purportedly less protective standards plaintiff believes the recent amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act Amendments") require.  But, as the Department demonstrated in its opening brief, binding circuit precedent prohibits this Court from interfering with or supervising the Department's efforts to enforce civil rights statutes like Title IX because plaintiff has an adequate remedy at law—a private right of action directly against the University of Virginia ("UVA") for discrimination.  It does not matter that plaintiff purports to challenge the alleged shortcomings (or future, speculated shortcomings) of the Department's investigation as opposed to the lawfulness of UVA's policies or actions.  The D.C. Circuit has rejected this exact argument, concluding that "a direct action against a regulated private party [i]s an adequate remedy at law for whatever additional injury a plaintiff suffered as a result of a federal agency's failure to remedy that violation administratively."  *Garcia v. Vilsack*, 563 F.3d 519, 525 (D.C. Cir. 2009) (citing cases).

Plaintiff's opposition also confirms that the majority of her claims are based on unsupported—indeed, refuted—speculation that, in investigating and resolving plaintiff's OCR complaint, the Department will apply the purportedly less protective standards of the Clery Act Amendments rather than the requirements of Title IX.  The Department has repeatedly stated that

the Clery Act Amendments do not alter or amend the requirements of Title IX—both publicly and in this litigation, s*ee* Mem. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Mem.") at 2, 7-8, ECF No. 7-1, May 20, 2014, and, most recently, in the Notice of Proposed Rulemaking to implement the Clery Act Amendments, *see* 79 Fed. Reg. 35,418, 35,422 (June 20, 2014) ("[The Clery Act Amendments] did not affect in any way [Title IX], its implementing regulations, or associated guidance issued by the Department's Office for Civil Rights.").  Plaintiff's refusal to acknowledge these statements does not create a certainly impending injury or crystalize her unripe claims.

Finally, plaintiff's attempt to rewrite her complaint to assert a facial challenge to the constitutionality of the Clery Act Amendments should be rejected.  Such a claim was not asserted in any of the "Claims For Relief" in her complaint.  And amendment of plaintiff's complaint to assert this new claim would be futile, as the claim is not justiciable and lacks merit. This new facial challenge is based on the same speculation discussed above, and the Supreme Court has made clear that, in assessing facial challenges, courts "must be careful not to . . . speculate about hypothetical or imaginary cases."  *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008) (quotations omitted).  Moreover, the Clery Act and its recent amendments fit squarely within Congress's spending power, which permits Congress to further broad policy objectives by conditioning the receipt of federal funds on compliance with specified conditions.  *See South Dakota v. Dole*, 483 U.S. 203, 206 (1987).

For the reasons set forth in the Department's opening brief and below, this case should be dismissed.

## ARGUMENT

I. **PLAINTIFF'S FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF THE CLERY ACT AMENDMENTS IS NOT PROPERLY PRESENTED AND, IN ANY EVENT, SHOULD BE DISMISSSED FOR LACK OF JURISDICTION AND FAILURE TO STATE A CLAIM**

Plaintiff faults the Department for not addressing what plaintiff sees as the "central allegation" in her complaint—that the Clery Act Amendments are unconstitutional on their face. Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 1, ECF No. 9, June 17, 2014.  But not a single count of plaintiff's complaint alleges that the Clery Act Amendments are facially unconstitutional.  Plaintiff, to be sure, sprinkled a few statements regarding the Clery Act Amendment's purported unconstitutionality in the background sections of her complaint, *see* Compl. ¶¶ 19, 32-34, but none of her "Claims For Relief" state such a claim, *see* Compl. ¶¶ 51-93.  Rather, the counts of the complaint focus on the statutory and constitutional violations that plaintiff believes will come to pass if, in resolving plaintiff's OCR complaint, the Department applies the Clery Act Amendments in a way that supersedes the requirements of Title IX.  *See id.*  This Court should not entertain plaintiff's newly-asserted, facial challenge because plaintiff has not complied with the pleading requirements in Federal Rule of Civil Procedure 8.  *See Grynberg v. ENI S.P.A.*, 503 F. App'x 42, 44 (2d Cir. 2012) (concluding district court correctly ruled that plaintiff did not make a misappropriation of trade secrets claim where "complaint identified only one claim for relief and it was entitled 'unjust enrichment'"); *Donahoe v. Arpaio*, 869 F. Supp. 2d 1020, 1076 (D. Ariz. 2012) ("A complaint having the factual elements of a cause of action present but scattered throughout the complaint and not organized into a short and plain statement of the claim may be dismissed for failure to satisfy Rule 8(a)." (quotation omitted)).

The Court, moreover, should not permit plaintiff to amend her complaint to assert this new claim, as it would be futile.  *See In re Interbank Funding Corp. Sec. Litig.*, 629 F.3d 213,

3

218 (D.C. Cir. 2010).   Contrary to plaintiff's suggestion, *see* Opp'n at 15, the standing and

ripeness requirements discussed in the Department's opening brief apply with full force to facial

challenges.   *See Media Access Project v. FCC*, 883 F.2d 1063, 1070 (D.C. Cir. 1989);

*A.N.S.W.E.R. Coal. v. Salazar*, 915 F. Supp. 2d 93, 101 (D.D.C. 2013).   Indeed, the Supreme

Court has made clear that, in addressing facial challenges, courts "must be careful not to go

beyond the statute's facial requirements and speculate about hypothetical or imaginary cases."

*Wash. State Grange*, 552 U.S. at 449-50 (quotations omitted).   Here, plaintiff's alleged injury

stems solely from plaintiff's unsupported—indeed, directly refuted—claim that the Department

plans to apply the Clery Act Amendments to her OCR complaint (and "future complaints

involving similarly situated complainants") in a manner that is inconsistent with, or provides less

protection than, Title IX.   Opp'n at 4.   But such speculation does not create a justiciable

controversy, particularly where, as here, the Department has repeatedly stated that the Clery Act

Amendments do not alter Title IX's requirements.   *See* Defs.' Mem. at 2, 7-8; *infra* n.5.

Adjudication of plaintiff's facial challenge under these circumstances would "raise the risk of

premature interpretation of [a statute] on the basis of [a] factually barebones record[]" and "run

contrary to the fundamental principle of judicial restraint that courts should [not] anticipate a

question of constitutional law in advance of the necessity of deciding it."   *Wash. State Grange*,

552 U.S. at 450 (quotations omitted).   Therefore, even if plaintiff were to properly present this

claim, the Court would lack jurisdiction to resolve it.[1]

---

[1] Plaintiff does not appear to contend that any educational institution she attends has relied on the Clery Act Amendments to violate Title IX's requirements.   Any such alleged injury would raise additional standing problems.   *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992); *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 755 (4th Cir. 2013) ("The traceability and redressability prongs [of standing] become problematic when third persons not party to the litigation must act in order for an injury to arise or be cured.").   In any event, plaintiff has an adequate remedy if those circumstances arise—a suit directly against the educational institution under Title IX.   *See infra* Argument II.

This new claim also would fail on the merits because the Clery Act Amendments are a valid exercise of Congress's spending power and they do not require (or permit) sex discrimination.  The Spending Clause permits Congress "to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives."  *Dole*, 483 U.S. at 206 (quotation omitted); *see also* U.S. Const., Art. I, § 8, cl. 1.  The Clery Act, as well as the recent amendments to it—which require educational institutions to disclose information about their security policies and crimes committed on or around their campuses as part of the numerous requirements institutions must satisfy in exchange for the privilege of participating in the Federal student financial aid programs, *see* 20 U.S.C. § 1092(f)—fits squarely within this power.

Plaintiff is wrong in asserting that, when prescribing conditions for federal benefits, Congress's spending power cannot be used to regulate matters, like violence against women, that are purportedly reserved to the states.  There is no such limitation on the spending power. Indeed, the Supreme Court rejected this very argument in *Dole*, when it upheld a law that conditioned federal highway funds on a state's adoption of a minimum drinking age of 21 "even if Congress may not regulate drinking ages directly."  483 U.S. at 206.  The Court explained that any "perceived Tenth Amendment limitation on congressional regulation of state affairs did not concomitantly limit the range of conditions legitimately placed on federal grants."  *Id.* at 210 (citing *Oklahoma v. Civil Serv. Comm'n*, 330 U.S. 127 (1947)); *see also, e.g.*, *Kansas v. United States*, 214 F.3d 1196, 1198 (10th Cir. 2000).  If plaintiff were right about this purported limit on the Spending Clause (and she is not), it would be fatal to her goal of enforcing Title IX's requirements.  The Supreme Court has "repeatedly treated Title IX as legislation enacted pursuant to Congress's authority under the Spending Clause."  *Davis v. Monroe Cnty. Bd. of*

*Educ.*, 526 U.S. 629, 640 (1999) (citing cases).  If the Clery Act were invalid because it regulates violence against women (and it is not), so too would be Title IX, which also regulates violence against women.[2]

Plaintiff also contends that the Clery Act Amendments are unconstitutional because they require funding recipients "to engage in . . . unconstitutional" discrimination.  Opp'n at 1.  But they do not.  The Clery Act Amendments require covered educational institutions to report incidents of domestic violence, dating violence, sexual assault, and stalking that occur on or near their campuses and to disclose information about the institution's policies and procedures relating to these crimes.  *See* Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, § 304(a)(1)(B)(iii), (a)(8), 127 Stat. 54 (2013).  There is nothing unconstitutional or discriminatory about these reporting requirements.

## II.   THE EXISTENCE OF A CAUSE OF ACTION DIRECTLY AGAINST UVA PRECLUDES ALL OF PLAINTIFF'S CLAIMS AGAINST THE DEPARTMENT

As the Department demonstrated in its opening brief, controlling precedent makes clear that courts cannot interfere with or supervise a federal agency's efforts to enforce civil rights statutes where, as here, the plaintiff has an adequate remedy directly against the allegedly discriminating entity.  Plaintiff contends that a suit against UVA is not adequate because she is not challenging the lawfulness of UVA's policies, but rather the Department's purported lack of promptness in resolving her OCR complaint and the standards the Department might apply in

---

[2] Plaintiff's reliance on *United States v. Butler*, 297 U.S. 1 (1936), and *United States v. Morrison*, 529 U.S. 598 (2000), *see* Opp'n at 1, is misplaced.  To the extent *Butler* suggested that Congress's spending power is cabined by the Tenth Amendment's reservation of rights to the states, "the Court quickly abandoned this view."  *United States v. Lipscomb*, 299 F.3d 303, 319 (5th Cir. 2002); *see* Laurence H. Tribe, American Constitutional Law § 5–b, at 836 (3d ed. 2000) ("[T]he Supreme Court has effectively ignored *Butler* in judging the limits of congressional spending power.")).  Furthermore, *Morrison* addressed Congress's authority under the Commerce Clause, not the Spending Clause, *see* 529 U.S. at 607, and the provision of the Violence Against Women Act that was at issue in *Morrison* was not a funding provision, but rather, a civil remedy provision, *see id.* at 601-02.

doing so.  *See* Opp'n at 8-9.  Alternatively, she asserts that the Clery Act Amendments "effectively overturned" the Supreme Court's recognition in *Cannon v. University of Chicago*, 441 U.S. 677 (1979), of a private right of action under Title IX against discriminating educational institutions.  *See* Opp'n at 9-10.  Neither of these arguments has any merit.

Both *Women's Equity Action League v. Cavazos* ("*WEAL*"), 906 F.2d 742 (D.C. Cir. 1990), and *Council of and for the Blind v. Regan*, 709 F.2d 1521 (D.C. Cir. 1983) involved claims of agency delay in resolving discrimination complaints.  Like plaintiff here, the plaintiffs in *WEAL* stressed that they "sue[d] only to assure that federal agencies . . . promptly process[] complaints and compliance reviews."  906 F.2d at 750.  The plaintiffs in *Council of and for the Blind* similarly alleged that the federal agency had "fail[ed] to adhere to statutory and regulatory time limits for resolving discrimination complaints."  709 F.2d at 1524 (quotation omitted).  Nevertheless, in both cases, the court had no trouble concluding that the claims against the federal agencies were barred because the plaintiffs could sue the allegedly discriminating entities directly.  *WEAL*, 906 F.2d at 750; *Council of and for the Blind*, 709 F.2d at 1531.

More recently, in *Garcia*, the D.C. Circuit explicitly rejected the argument plaintiff makes here, *i.e.*, that "a plaintiff may always bring an [Administrative Procedure Act ("APA")] claim alleging that an agency failed to follow its own regulations in processing or investigating discrimination allegations, notwithstanding the existence of other adequate remedies at law." 563 F.3d at 525.  "The suggestion that [the alternate remedy] would not vindicate [the plaintiffs'] interest in ensuring that the [agency] adheres to its duty-to-investigate regulations," the court explained, "was rejected in *Council* [*of and for the Blind*], *Coker* [*v. Sullivan*, 902 F.2d 84 (D.C. Cir. 1990)], and *WEAL* when the court concluded that a direct action against a regulated private

party was an adequate remedy at law for whatever additional injury a plaintiff suffered as a result of a federal agency's failure to remedy that violation administratively." *Garcia*, 563 F.3d at 525.

The fact that plaintiff purports not to challenge UVA's actions or policies, but rather, the standards the Department may use in resolving her OCR complaint, also does not negate the adequacy of plaintiff's remedy against UVA. Indeed, the D.C. Circuit rejected a similar argument in *National Wrestling Coaches Association v. Department of Education*, 366 F.3d 930 (D.C. Cir. 2004). In that case, the plaintiffs challenged a policy interpretation adopted by the Department that provided guidance as to how the Department would assess compliance with the Title IX regulations on athletics. *Id*. at 934-35. The plaintiffs claimed that "the enforcement policy embodied in [the policy interpretation]" violated the Constitution and exceeded the Department's authority, *id*. at 936, and that "a suit against a university . . . cannot provide an 'adequate remedy' for the alleged unlawfulness of the Department's enforcement policies," *id*. at 947. The court was not persuaded. It observed, among other things, that "challenges to the lawfulness of the Department's policies in fact may be aired in a suit against a university, to the extent that the defendant university attempts to justify its actions by reference to those policies." *Id*. at 947. The same is true here. If UVA relies on the Clery Act Amendments to defend its actions in any suit plaintiff brings against the university under Title IX, the court can address the contention that the Clery Act Amendments have altered Title IX at that time.[3]

---

[3] *Scenic America, Inc. v. U.S. Department of Transportation*, 983 F. Supp. 2d 170 (D.D.C. 2013), on which plaintiff relies, *see* Opp'n at 9, is not persuasive. There, the court determined that a possible remedy in *state court* to challenge a State's decision to permit digital billboards did not qualify as an adequate remedy precluding review under the APA of the agency's final decision that a federal statute authorized states to permit digital billboards. *Scenic America*, 983 F. Supp. 2d at 185. The court explicitly distinguished the possible state court remedy at issue in *Scenic America* from the congressionally-created "independent cause of action" that was available in *WEAL* and other cases involving "federal agencies' failure to enforce antidiscrimination laws against third parties." *Id*.

Finally, nothing in the Clery Act Amendments calls into question the Supreme Court's recognition in *Cannon* of a private right of action against discriminating educational institutions under Title IX.  As an initial matter, the provision of the Clery Act that plaintiff claims "effectively overturned" *Cannon* is from the original statute enacted in 1990, not the recent amendments.  Opp'n at 9 (citing 20 U.S.C. 1092(f)(14)(A)(i)).  Therefore, under plaintiff's bizarre theory, every case since 1990 that allowed or relied on the private right of action under Title IX was wrongly decided.  But that is not the case.  Indeed, in 2004, in response to a similar argument that recent precedent had altered *Cannon*, the D.C. Circuit reaffirmed that "the cause of action recognized in *Cannon* remains viable."  *Nat'l Wrestling Coaches Ass'n*, 366 F.3d at 946.

Plaintiff, moreover, has not cited anything to suggest that Congress intended to overrule *Cannon* (or the private right of action that *Cannon* recognized Congress to have intended in enacting Title IX) when it enacted the Clery Act or its amendments.  Even if Congress intended to deny private parties a right of action to enforce the Clery Act's requirements,[4] it does not follow that Congress meant to eliminate a recognized private right of action to enforce an entirely different statute (Title IX).  "Congress does not overrule . . . Supreme Court precedent . . . subtly," much less silently.  *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *see also Sprint Spectrum L.P. v. City of Carmel*, 361 F.3d 998, 1004 (7th Cir. 2004) ("Absent . . . explicit language, . . . we will not . . . presume that Congress intended to modify Supreme Court precedent . . . ."); *Calcano–Martinez v. INS*, 232 F.3d 328, 338–39 (2d Cir. 2000).

---

[4] The Department takes no position at this time regarding whether the Clery Act provides a private right of action for individuals to enforce its requirements against colleges.  That question is irrelevant here because the applicable cause of action for plaintiff is under Title IX, as it is Title IX's requirements that she is seeking to enforce.

### III.   PLAINTIFF'S CLAIMS OF POSSIBLE, FUTURE HARM ARE FAR TOO SPECULATIVE TO BE JUSTICIABLE

Counts III through VIII seek an advisory opinion, plain and simple.  Plaintiff does not claim that the Department has investigated her OCR complaint using the purportedly less protective standards she believes the Clery Act Amendments now require; instead, she fears that the Department might do so.  *See, e.g.*, Opp'n at 16 (stating that the Clery Act Amendments "permit[] the Defendants to discriminate"); *id.* (claiming the Clery Act Amendments "enable[] the Defendants" to apply a lesser standard).  But plaintiff's fear is based on nothing but speculation.  And worse still, it is speculation that ignores the Department's repeated statements that the Clery Act Amendments do not alter or amend Title IX.  Plaintiff thus asks this Court to address the effects of a statute—the Clery Act Amendments—that has not injured plaintiff in any way, and likely never will.  These claims are not justiciable.

Plaintiff's attempt to invoke a lesser justiciability standard, *see* Opp'n at 14-15, does not help her cause, because no lesser standard applies here.  The "Article III case or controversy requirement is as applicable to declaratory judgments as it is to other forms of relief."  *Conyers v. Reagan*, 765 F.2d 1124, 1127 (D.C. Cir. 1985).  Nor is plaintiff aided by "threatened enforcement" cases.  *See* Opp'n at 16.  Those cases involve *imminent* enforcement *against the plaintiff* of a statute regulating *speech*.  *See, e.g.*, *Susan B. Anthony List v. Driehaus*, No. 13-193, 2014 WL 2675871, at *8-11 (U.S. June 16, 2014) (involving statute that criminalized false statements about candidates; statute had been enforced against the plaintiff previously and the plaintiff intended to engage in the same speech again).  Here, the Department has no intention of enforcing against plaintiff the Clery Act Amendments, which govern the conduct of colleges and universities.  The Department also has repeatedly stated that the Clery Act Amendments do not

apply to OCR complaints, like that submitted by plaintiff.  Therefore, there also is nothing imminent about any injury in this case.

Indeed, plaintiff's allegations of imminent injury simply ignore the Department's repeated public statements about the effects of the Clery Act Amendments.  Plaintiff claims the Department "refused to assure [her] that [the Clery Act Amendments'] less protective standard will not be applied to her case."  Opp'n at 14; *see also id.* at 4, 17.  But the Department has repeatedly made clear that the Clery Act Amendments do not alter or amend the requirements of Title IX—in public statements, during rulemaking sessions to implement the Clery Act Amendments, and in briefing in this case.[5]  *See* Defs' Mem. at 2, 7-8.  Plaintiff's refusal to acknowledge these statements does not negate them.  She simply cannot escape the fact that this Court has no jurisdiction to adjudicate claims based on speculation that the Department will resolve her OCR complaint using a legal interpretation that the Department has expressly disclaimed.  *See Gas Pipeline Co. v. FERC*, 736 F.2d 747, 751 (D.C. Cir. 1984) ("Were we to entertain anticipatory challenges pressed by parties facing no imminent threat of adverse agency action, . . . we would venture away from the domain of judicial review into a realm more accurately described as judicial preview.").

Plaintiff's claims are similar to those asserted in *Weaver's Cove Energy, LLC v. Allen*, 587 F. Supp. 2d 103 (D.D.C. 2008).  There, the plaintiffs sought a declaration that the Coast Guard's obligations under the Truman–Hobbs Act to conduct an investigation to determine whether a bridge constitutes an unreasonable obstruction to navigation was not superseded by a

---

[5] In the preamble to the Notice of Proposed Rulemaking to implement the Clery Act Amendments, which was issued after the Department filed its opening brief, the Department again reiterated that "[the Violence Against Women Reauthorization Act of 2013] amended the Clery Act, but it did not affect in any way [Title IX], its implementing regulations, or associated guidance issued by the Department's Office for Civil Rights (OCR). . . .  Nothing in these proposed regulations alters or changes an institution's obligations or duties under title IX as interpreted by OCR."  79 Fed. Reg. at 35,422.

new law prohibiting the expenditure of federal funds for the demolition of a particular bridge. *Id*. at 105-06.  The Coast Guard agreed that the new law did not absolve it of its duties under the Truman-Hobbs Act.  *Id*. at 111.  The court determined the claim was not ripe.  *Id*. at 112.  The court explained that it has "no authority to grant declaratory relief based on plaintiff's speculation that defendants may, in the future, conduct an investigation too narrow in scope . . . or refuse to carry out their statutory and regulatory duties.  The controversy between the parties regarding the impact of [the new law] on the defendants' statutory obligations is not of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  The Court has no authority to decide an issue that has not arisen and may never occur."  *Id*. (quotation omitted). The same is true here.

The constitutional standing and ripeness problems identified above and in the Department's opening brief make it unnecessary for the Court to address prudential ripeness. Nevertheless, plaintiff's claims are not prudentially ripe either.  Counts III through VIII are not fit for review for the reasons stated above.  As to hardship, the Department explained in its opening brief that plaintiff will suffer no hardship from denial of review because she has an adequate remedy against UVA.  Plaintiff ignores this argument and instead claims that "being forced to attend school alongside her attacker" while the Department investigates her complaint satisfies the hardship prong.  Opp'n at 14.  It does not for several reasons.

First, the cases define hardship as being put to the choice of foregoing lawful activity or risking substantial legal sanctions.  *See, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967), *overruled on other grounds in Califano v. Sanders*, 430 U.S. 99, 105 (1977) (finding hardship where regulations "require[d] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance").  Plaintiff has not been put to any

such choice here.  Second, it appears that plaintiff graduated from UVA before she filed this

action.  *See* Opp'n at 18, 20.  Therefore, even if attending school with her alleged attacker was a

hardship for ripeness purposes, denying review here would not be the cause of, or perpetuate,

that hardship.  Finally, it has always been within plaintiff's power to ameliorate this alleged

hardship—by suing UVA to vindicate her rights.  *See Cabais v. Egger*, 690 F.2d 234, 240 (D.C.

Cir. 1982) (concluding claims were not ripe where plaintiff had another adequate remedy).

## IV.   THE DEPARTMENT CANNOT BE COMPELLED TO RESOLVE CIVIL RIGHTS COMPLAINTS WITHIN A PARTICULAR TIMEFRAME

In its opening brief, the Department explained that Counts I and II, which seek to compel

resolution of plaintiff's OCR complaint, should be dismissed because Title IX and its

implementing regulations do not impose any legal duty on the Department to resolve OCR

complaints in any particular timeframe.  Plaintiff does not dispute that "no fixed deadline applies

to the resolution of [her] complaint."  Opp'n at 20.  Instead, she points to language in the

Department's regulations, which states that the Department "will make a prompt investigation

whenever a compliance review . . . [or] complaint . . . indicates a possible failure to comply with

[Title IX]."  34 C.F.R. § 100.7(c); *see* Opp'n at 5, 8, 20.  The regulations, however, do not define

"prompt."  *See* 34 C.F.R. pt. 100; Opp'n at 5 ("[T]here is no statutory or regulatory definition of

'prompt' requiring the Defendants to complete their investigation of [plaintiff's] complaint

within a specific time frame[.]").  As the D.C. Circuit recognized in *Coker*, 902 F.2d at 89, where

the relevant statute and regulations similarly "d[id] not impose any specific schedule or time

frame on the [agency]," courts "should not steer the Department's resources and shape its

priorities when [it] lack[s] knowledge of the matters competing for the Department's attention."

*Id*.

Plaintiff also asserts that the Department adheres to a policy and practice of resolving Title IX complaints within 180 days and that the Department requires educational institutions to resolve Title IX complaints within 60 days.  *See* Opp'n at 6 n.10, 20.  Even if these assertions were relevant (and they are not because the relevant statute and regulations do not impose any timeframes on the Department), the authority plaintiff points to does not support her claims.  The Department did resolve 95% of the 9,950 civil rights cases it received in 2013 in 180 days,[6] but the Department does not have any policy that requires it to do so.  That is because the length of each investigation depends on the complexity of the issues presented, the extent and severity of the alleged harassment, and the number and complexity of other investigations the Department has pending at the time.[7]  Furthermore, far from imposing an absolute deadline on educational institutions, the Department's April 4, 2011 Dear Colleague Letter states that "a typical investigation [by a college] takes approximately 60 calendar days," but whether the Department considers a college's complaint resolutions to be timely will depend "on the complexity of the investigation and the severity and extent of the harassment."  *See* Dear Colleague Letter at 12, U.S. Dep't of Educ., April 4, 2011, *available at* http://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf; *see also* Questions and Answers on Title IX and Sexual Violence, at 32, U.S. Dep't of Educ., April 29, 2014, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf ("OCR does not require a school to complete investigations within 60 days; rather OCR evaluates on a case-by-case basis

---

[6] *See Activists applaud White House effort to fight campus rapes*, Washington Post (Jan. 25, 2014), *available at* http://www.washingtonpost.com/blogs/she-the-people/wp/2014/01/25/activists-applaud-white-house-effort-to-fight-campus-rapes/.

[7] The Department is currently investigating more than 60 institutions for their handling of sexual assault cases.  *See Changes to Campus Safety Rules*, InsideHigherEd.com (June 20, 2014), *available at* http://www.insidehighered.com/news/2014/06/20/white-house-publishes-new-rules-reporting-investigating-sexual-assaults#sthash.6aFZrPBZ.dpbs.

whether the resolution of sexual violence complaints is prompt and equitable.  Whether OCR

considers an investigation to be prompt as required by Title IX will vary depending on the

complexity of the investigation and the severity and extent of the alleged conduct.").  In short,

plaintiff has not shown that the timeframe within which the Department resolves OCR

complaints is anything other than discretionary, and thus, this Court cannot impose time limits on

the Department under the Mandamus Act or the APA.[8]

Plaintiff's reliance on *Telecommunications Research and Action Center v. FCC*

("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984), *see* Opp'n at 19-22, is misplaced.  The factors

discussed in that case for assessing claims of agency delay do not apply where, as here, the

plaintiff has an adequate remedy at law or the court lacks jurisdiction to review the final agency

decision the plaintiff is seeking to compel.

First, *TRAC* is inapplicable if the plaintiff has an adequate remedy.  In *Garcia*, the

plaintiffs sought to compel the agency to investigate administrative complaints that alleged

discrimination in the agency's administration of its farm benefit programs.  563 F.3d 519.

Because the plaintiffs had an adequate remedy for their claims under the Equal Credit

Opportunity Act, the court refused to consider whether relief would be available under *TRAC* in

the absence of this adequate remedy.  *Id*. at 522 n.3.  The same reasoning applies here.  *TRAC* is

not implicated because plaintiff has an adequate remedy against UVA.  *See supra* Argument II.

Second, a court can compel agency action under *TRAC* only if it would have jurisdiction

to review the final agency decision being compelled.  In *TRAC*, the court explained that its

---

[8] Plaintiff also appears to be seeking relief "on behalf of women as a class" with respect to a complaint
that was filed against Harvard Law School in 2010.  *See* Opp'n at 6-7, 22.  Plaintiff, however, does not
have standing to assert any claims with respect to this complaint, as she has not alleged that she submitted
the complaint or that she attended or attends Harvard Law School.  Plaintiff states that she "is a member
of the class intended to benefit from that investigation," Opp'n 7, but it is not clear whether this statement
refers to her status as a woman or something else.  In any event, any claims as to the Harvard complaint
fail for the same reasons that plaintiff's other claims fail.

jurisdiction to compel agency action stemmed from its need to protect its jurisdiction to review

the agency's final decision.  "[T]here is no doubt," the court noted, that it "has present

jurisdiction to hear claims concerning nonfinal agency action (or inaction) that might affect [its]

future statutory review of final agency action."  *TRAC*, 750 F.2d at 79; *see Nat'l Mining Ass'n v.*

*Mine Safety & Health Admin.*, 599 F.3d 662, 673 (D.C. Cir. 2010) (declining to compel agency

to complete study where the plaintiff "point[ed] to no statute that would authorize [the] court to

review [the agency's] study upon its completion," and explaining that "[t]his court's interest in

protecting its future jurisdiction does not arise if the final agency action is not reviewable in this

court" (quotation omitted)); *TRAC*, 750 F.2d at 76 ("Because the statutory obligation of a [court]

to review on the merits may be defeated by an agency that fails to resolve disputes, a [court] may

resolve claims of unreasonable delay in order to protect its future jurisdiction."); *id*. at 77

(observing that the APA "indicate[s] a congressional view . . . that *court's designated by statute*

*to review agency actions* may play an important role in compelling agency action that has been

improperly withheld or unreasonably delayed" (emphasis added)).  Indeed, plaintiff has not cited

(and the government is not aware of) any case in which the D.C. Circuit applied *TRAC* to compel

agency action (or to decline to compel agency action) where the court would not have had

jurisdiction to review the final agency decision the plaintiff sought to compel.  *See, e.g.*, *In re*

*Core Commc'ns*, 531 F.3d 849, 850-52 (D.C. Cir. 2008); *Pub. Citizen Health Research Grp. v.*

*Comm'r*, 740 F.2d 21, 27 (D.C. Cir. 1984).  Here, the Department's final resolution of plaintiff's

OCR complaint is not subject to judicial review,[9] and thus, *TRAC* does not permit the court to compel the Department to complete its investigation in any particular time-frame.[10]

## V.   THE DEPARTMENT'S ALLEGED FAILURE TO PROCESS PLAINTIFF'S OCR COMPLAINT IN THE MANNER PLAINTIFF WOULD LIKE DOES NOT DEPRIVE HER OF A LIBERTY INTEREST

In its opening brief, the Department demonstrated that plaintiff's due process claims (Counts IV and V) should be dismissed because plaintiff has not alleged that she was deprived of any liberty or property interest protected by the U.S. Constitution.  The Department pointed to *WEAL*, where the D.C. Circuit dismissed a nearly identical due process claim that was based on the Department's purported shortcomings in responding to Title IX OCR complaints and enforcing compliance with Title IX.  906 F.2d at 752.  *WEAL* explains that an "agency's failure to process discrimination complaints in the manner required by [Title IX] does not deprive the complainants of constitutional rights" because it "does not *extinguish* their [statutory] rights . . . , it merely denies them the assistance of the [agency] in vindicating those rights."  *WEAL*, 906 F.2d at 752 (quoting *Council of and for the Blind*, 709 F.2d at 1533).

Plaintiff makes no effort to distinguish *WEAL* in her opposition.  She goes to great lengths to try to distinguish *Council of and for the Blind*, *see* Opp'n at 23-24, but the factual differences she points to do not undermine the controlling nature of that case's holding.  Indeed, in *WEAL*, when presented with facts that are nearly identical to those at issue here, the D.C. Circuit concluded that *Council of and for the Blind* controls.  *See WEAL*, 906 F.2d at 752.

---

[9] *See Heckler v. Cheney*, 470 U.S. 821, 832 (1985); *Heckler v. Ringer*, 466 U.S. 602 (1984); *Sherman v. Black*, 315 F. App'x 347, 348-49 (2d Cir. 2009); *Marlow v. U.S. Dep't of Educ.*, 820 F.2d 581, 582-83 (2d Cir. 1987); *see also supra* Argument II.

[10] Because the Department does not believe the *TRAC* factors apply in this case, those factors are not discussed here.  If the Court nevertheless determines that *TRAC* applies and Counts I and II are not otherwise subject to dismissal, the Department likely would move for summary judgment on these claims and address the *TRAC* factors at that time.

Plaintiff maintains that she has asserted a "specific and cognizable deprivation of liberty," Opp'n at 23, but she never clearly defines what it is.  *See Chavez v. Martinez*, 538 U.S. 760, 775 (2003) (observing that the plaintiff must provide "a 'careful description' of the asserted fundamental liberty interest" when raising a due process claim).  She appears to contend that the Department's purported delay in investigating her OCR complaint and the possibility that the Department might evaluate the complaint under the purportedly less protective standards of the Clery Act Amendments, instead of Title IX, will deprive her of liberty.  Aside from being speculative, *see supra* Argument III, plaintiff cites no authority to demonstrate that this is in fact a liberty interest.  The Department has not deprived plaintiff of any right to be free from sex discrimination.  At most, she alleges that the Department has denied her "administrative assistance in the vindication of underlying . . . statutory and constitutional interests" in being free from sex discrimination.  *Council of and for the Blind*, 709 F.2d at 1534 (quotation omitted).  Such allegations, the D.C. Circuit has made clear, do not state a due process claim.  *See WEAL*, 906 F.2d at 752; *Council of and for the Blind*, 709 F.2d at 1534.[11]

## VI.    NEITHER TITLE IX NOR TITLE IV PROVIDES PLAINTIFF WITH A PRIVATE RIGHT OF ACTION AGAINST THE DEPARTMENT

The Department demonstrated in its opening brief that Counts VII and VIII, which are brought pursuant to Title IX and Title IV, respectively, should be dismissed because these statutes do not create a private right of action against the government with respect to its

---

[11] Plaintiff's reliance on *Adams v. Richardson*, 480 F.2d 1159 (D.C. Cir. 1973), *see* Opp'n at 25, is unconvincing.  As an initial matter, that case involved an APA claim, not a due process claim.  Moreover, the court's authority to decide *Adams* has been questioned by the D.C. Circuit after *Cannon* because of the adequate remedy directly against discriminating entities that *Cannon* recognized.  *See WEAL*, 906 F.2d at 746 (noting that *Adams* "did not treat the question whether an APA action might be precluded by reason of the availability of another adequate remedy").  Finally, even if *Adams* is still good law, it involved circumstances where the agency made express findings that schools had engaged in unlawful discrimination and yet the agency took no action.  *See* 480 F.2d at 1164; *see also Adams v. Richardson*, 356 F. Supp. 92 (D.D.C. 1973).  That is not the case here.

enforcement activities. *See* Defs.' Mem. at 21-23.  Plaintiff's response to this argument is befuddling.  She asserts that the APA provides a waiver of sovereign immunity for Counts VII and VIII (which is wrong for reasons already explained, *see* Defs.' Mem. at 11-13; *supra* Argument II) and that she can assert claims against the federal government under the Fifth Amendment's Equal Protection and Due Process Clauses. *See* Opp'n at 26-27.  Of course, neither of these arguments addresses the Department's point: Title IX and Title IV—the statutes under which plaintiff purports to bring Counts VII and VIII—do not provide a private right of action against the Department.  Because plaintiff wholly failed to address this argument, these claims should be dismissed. *See Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, No. Civ.A. 04-1724(CKK), 2006 WL 696053, *23 (D.D.C. Mar. 20, 2006) (construing a plaintiff's failure to respond to the agency's arguments as "a concession that the [a]gency's arguments on th[e] issue are meritorious"); *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 238 F. Supp. 2d 174, 178 (D.D.C. 2002) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").[12]

## VII.  PLAINTIFF'S FREE SPEECH CLAIM FAILS BECAUSE THE CLERY ACT DOES NOT REGULATE PLAINTIFF'S SPEECH

In its opening brief, the Department showed that plaintiff's free speech claim should be dismissed because the Clery Act Amendments do not regulate plaintiff's speech (or the speech of other students) in any way.  Plaintiff's opposition confirms just how unprecedented her free speech claim is.

---

[12] To the extent plaintiff means to say that, despite what her complaint says, her Title IX and Title IV claims are not really Title IX and Title IV claims at all but rather additional equal protection and due process claims, those claims fail for the same reasons that her other equal protection and due process claims fail. *See supra* Arguments III and V.

Plaintiff concedes that the Clery Act Amendments do not regulate, restrict, or limit her speech.  Instead, her claim is that the government's regulation of third parties—*i.e.*, educational institutions via the Clery Act Amendments—has a chilling effect on plaintiff's speech.  *See* Opp'n at 27.  Plaintiff, however, cites no authority for her extraordinary view that the Free Speech Clause's protections extend this far (and the government is not aware of any).  To be sure, in *Laird v. Tatum*, 408 U.S. 1, 11 (1972), the Supreme Court observed that free speech violations may arise from the chilling effect of laws that do not directly prohibit speech.  But, in the same paragraph, the Court made clear that these "chilling" cases involve plaintiffs who were "either presently or prospectively *subject to* the regulations, proscriptions, or compulsions that [they were] challenging."  *Id.* (emphasis added).  Indeed, all of the cases plaintiff points to involved laws that regulated the speech *of the plaintiffs*, whether directly or indirectly.  *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 538 (2001) (lawyers challenged law that prohibited them from seeking to challenge existing welfare laws); *FCC v. League of Women Voters*, 468 U.S. 364, 366 (1984) (owners and operators of broadcasting stations challenged law that prohibited them from engaging in editorializing); *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 541 (1976) (journalists challenged court order that prohibited them from publishing certain admissions of the accused during a criminal trial); *Douglas v. City of Jeannette*, 319 U.S. 157, 159-60 (1943) (Jehovah's Witnesses challenged law that criminalized solicitation without a license); *Hygrade Provision Co. v. Sherman*, 266 U.S. 497, 499-500 (1925) (kosher business owners challenged law that criminalized improper labelling of kosher foods).[13]  The Clery Act and its amendments, in contrast, do not regulate plaintiff's speech; they regulate educational institutions by requiring them to disclose information about crimes committed on or around their

---

[13] *Terrace v. Thompson*, 263 U.S. 197 (1923), *see* Opp'n at 28, did not involve a free speech claim.

campuses and related security policies.  Because the law plaintiff challenges does not regulate her speech, her free speech claim fails.[14]

## **CONCLUSION**

For the reasons set forth above and in the Department's opening brief, the Court should dismiss this case.

Respectfully submitted this 11th day of July, 2014,

STUART F. DELERY
Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

SHEILA M. LIEBER
Deputy Director

 s/ Michelle R. Bennett
MICHELLE R. BENNETT (CO Bar No. 37050)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue N.W. Room 7310
Washington, D.C. 20530
Tel: (202) 305-8902
Fax: (202) 616-8470
Email: michelle.bennett@usdoj.gov

*Attorneys for Defendants*

---

[14] The Department also explained in its opening brief that plaintiff's right-to-petition claim fails because that right does not guarantee a government response to plaintiff's OCR complaint.  *See* Defs.' Mem. at 24.  Plaintiff's opposition does not address her right-to-petition claim, and thus, it is waived.  *See supra* p. 19 (citing cases).