IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, on behalf of herself and Similarly situated others,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF EDUCATION, and ARNE DUNCAN, in his official capacity as Secretary of the United States Department of Education,<br><br>Defendants. | Case No. 1:14-cv-00367-BAH |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S NOTICE
OF SUPPLEMENTAL AUTHORITY**

On October 16, 2014, plaintiff filed a notice of supplemental authority informing the Court of recent decisions made by the U.S. Department of Education ("Department") with respect to five administrative complaints submitted to its Office for Civil Rights ("OCR"). *See* ECF No. 13. Far from supporting plaintiff's position in this case, the OCR decisions—which plaintiff did not attach to her notice of supplemental authority and, in any event, mischaracterizes—merely reinforce arguments the Department made in support of its motion to dismiss. Specifically, the OCR decisions demonstrate that the Department is applying the requirements of Title IX of the Education Amendments of 1972 ("Title IX") when resolving complaints of sex discrimination at educational institutions, and not, as plaintiff fears, the purportedly less protective standards of the recent amendments to the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act ("Clery Act Amendments").

This case involves a complaint plaintiff filed with the Department in which she claims that the University of Virginia ("UVA") engaged in sex discrimination in violation of Title IX. The Department is currently investigating plaintiff's complaint as part of an ongoing compliance review of UVA.  Plaintiff believes, contrary to the Department's repeated assertions, that the Clery Act Amendments (which plaintiff refers to as the "SaVE Act") supersede or amend portions of Title IX and require the application of less protective standards to complaints of sex discrimination than the standards applied to other forms of unlawful discrimination.  Most of plaintiff's claims are premised on the mistaken assumption that, in resolving plaintiff's Title IX complaint with OCR (and the Title IX complaints of other unnamed individuals), the Department will apply the purportedly less protective standards of the Clery Act Amendments, instead of the requirements of Title IX.  *See* Compl. ¶¶ 67-93, ECF No. 3 (Mar. 6, 2014).

In its motion to dismiss, the Department demonstrated, among other things, that these claims are not justiciable because the Department has repeatedly stated that the Clery Act Amendments do not alter or amend Title IX and thus there is no reason to think that the Department will fail to apply the requirements of Title IX when investigating and resolving plaintiff's OCR complaint.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, at 1-2, 14-17, ECF No. 7-1 (May 20, 2014); Reply in Supp. of Defs.' Mot. to Dismiss, at 2-4, 10-13 & n.5, ECF No. 12 (July 11, 2014).  The OCR decisions cited in plaintiff's notice of supplemental authority serve to reinforce—rather than undermine, as plaintiff suggests—the Department's arguments by showing that the Department continues to apply the requirements of Title IX, and not the standards of the Clery Act Amendments, to complaints of sex discrimination at educational institutions.

The OCR decisions cited by plaintiff do not relate to plaintiff's OCR complaint, which is still under investigation by the Department. Instead, they stem from five other sex discrimination complaints submitted by a single individual with respect to different educational institutions. The OCR complaints were submitted on behalf of women as a class, are similar in content to one another, and contain many of the same assertions regarding the purported incompatibility of Title IX and the Clery Act Amendments that are alleged in the complaint plaintiff filed with this Court.[1] *See* Exs. A, D, G, J, M; *see* Compl. ¶¶ 13-44.

In response to four of these complaints, OCR sent the complainant what is known as a "20-day letter." *See* Exs. B, E, H, K. OCR's Case Processing Manual requires it to send such a letter before dismissing a complaint when the allegations in the complaint "lack[] sufficient detail (i.e., who, what, where, when, how) for OCR to infer that discrimination or retaliation may have occurred or is occurring" or when the allegations are "so speculative, conclusory, or incoherent that it is not sufficiently grounded in fact for OCR to infer that discrimination or retaliation may have occurred or is occurring." *See* OCR's Case Processing Manual, § 108, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/ocrcpm.html (Jan. 2010).

The 20-day letters explained that "OCR is responsible for enforcing Title IX and will apply Title IX as reflected in OCR guidance," but OCR does not enforce the Clery Act Amendments, and thus, the Clery Act Amendments are "not relevant" to OCR's resolution of the complaint.[2] Ex. E; *see* Exs. H, K; *see also* Ex. C. With respect to the complaints' allegations of Title IX violations, the 20-day letters explained that the information provided in each of the complaints was insufficient to infer that the institution's policies or procedures violated Title IX,

---

[1] The OCR complaints, as well as OCR's response(s) thereto, are attached as exhibits for the Court's convenience. Personally-identifying information has been redacted.

[2] The Clery Act (including the recent amendments thereto) is enforced by the Department's Federal Student Aid office.

3

as well as speculative and conclusory. *See* Exs. B, E, H, K. Therefore, as required by OCR's Case Processing Manual, the letters requested additional information from the complainant and warned that OCR would dismiss the complaint if the information was not submitted within twenty days. *See* Exs. B, E, H, K.

With respect to the complaint against the University of Oregon, for example, OCR asked the complainant, among other things, to "identify any specific incidents in which the university discriminated against female students, on the basis of sex, because of the university's application of the Campus SaVE act standards," and to provide, "if known, the name of the student allegedly discriminated against, the names of all university staff involved, actions taken by the university that were discriminatory and the dates of those actions." Ex. B. Similarly, after noting that the "examples . . . provided [in the complaint against Tulane University] d[id] not support [the complainant's] view that the University's policies and procedures fail to comply with Title IX," OCR requested "specific examples of how the University's sexual harassment policies and procedures fail to comply with Title IX." Ex. E. OCR explained that "it would be helpful if you could provide reliably sourced information (e.g., a story in a local newspaper or a specific witness with direct knowledge) regarding any specific incidents in which the University failed to provide a prompt and equitable response to a sexual violence allegation or that female students were subjected to [a] sexually hostile environment." *Id*.

The complainant did not provide the requested information in any of these cases; nor did she request more time to submit such information. *See* Exs. C, F, I, L. Accordingly, consistent with OCR's Case Processing Manual, and in the absence of sufficient information to indicate that the respective educational institutions were or are discriminating on the basis of sex in violation of Title IX, OCR issued a letter dismissing each of the four complaints. *See* Ex. F

("You provided no information from which OCR could infer that the University is discriminating against female students on the basis of sex.  For example, you did not include with your complaint any specific alleged incidents of sexual violence against students, nor any information to suggest that any reports of sexual harassment have been made to the University but that the University has not appropriately responded.  You did not indicate any specific provisions of the school's Title IX grievance procedures as allegedly failing to meet Title IX regulatory requirements."); Exs. C, I, L.[3]

These letters demonstrate that the OCR complaints were not dismissed on jurisdictional grounds or because they alleged that an institution's policy was facially noncompliant with Title IX, as plaintiff contends, but rather because the complainant failed to provide sufficient information from which OCR could infer a violation of Title IX.  *See* Exs. C, F, I, L; *see also* OCR's Case Processing Manual, §§ 104-105, 108 (no 20-day letter required for dismissals for lack of jurisdiction).  More importantly for purposes of the instant case and the Department's pending motion to dismiss, these letters demonstrate that the Department is applying the requirements of Title IX to complaints of sex discrimination at educational institutions, and not the standards of the Clery Act Amendments.  *See* Ex. C ("OCR is responsible for enforcing Title

---

[3] The OCR complaint against the University of Chicago was handled differently because some of its allegations were substantially similar to allegations made in another complaint against the same institution that the Department is currently investigating.  Therefore, in response to the University of Chicago complaint, OCR informed the complainant that it was incorporating her allegations of sex discrimination in violation of Title IX into the earlier filed, substantially identical complaint.  *See* Ex. N.  OCR also explained, as it did with respect to the four other complaints discussed above, that it "is responsible for enforcing Title IX and will apply Title IX as reflected in OCR guidance," but it does not enforce the Clery Act Amendments, and thus, the Clery Act Amendments are "not relevant" to OCR's resolution of the complaint.  *Id*.  Finally, with respect to the complainant's request that OCR "issue corrective guidance in the form of an Executive Order from the President of the United States declaring certain provisions of SaVE unconstitutional," Ex. M, OCR explained that it had no authority to require the President (or Congress) to undertake any such action, *see* Ex. N.

IX and will apply Title IX as reflected in OCR guidance. . . . [T]he SaVE Act is not relevant to complaints filed with OCR."); Ex. E, H, K, N.  In light of these OCR decisions and the Department's prior, repeated public assurances,[4] there is absolutely no reason to think that the Department will apply the standards in the Clery Act Amendments in lieu of the Title IX standards when investigating and resolving plaintiff's pending OCR complaint.  Accordingly, as explained more fully in the Department's briefing on its motion to dismiss, plaintiff's claims that rely on this unsupported—indeed, repeatedly refuted—speculation should be dismissed for lack of standing and ripeness.[5]

---

[4] *See* Mem. in Supp. of Defs.' Mot. to Dismiss, at 2 (citing Review of Title IX, at 3, U.S. Dep't of Educ., Negotiated Rulemaking, Violence Against Women Act, January 13, 2014, *available at* http://www2.ed.gov/policy/highered/reg/hearulemaking/2012/vawa-reviewoftitle9.pdf ("The requirements of Title IX . . . remain unchanged, and schools must comply with them as before."); Questions and Answers on Title IX and Sexual Violence, at 44, U.S. Dep't of Educ., April 29, 2014, *available at* http://www2.ed.gov/about/offices/list/ocr/docs/qa-201404-title-ix.pdf (explaining that a school's obligations under Title IX were not altered in any way by the recent amendments to the Clery Act)); Reply in Supp. of Defs.' Mot. to Dismiss, at 2, 11 n.5 (citing 79 Fed. Reg. 35,418, 35,422 (June 20, 2014) ("[The Clery Act Amendments] did not affect in any way [Title IX], its implementing regulations, or associated guidance issued by the Department's Office for Civil Rights.")).

[5] The OCR decision letters cited in plaintiff's notice of supplemental authority also reinforce another ground on which the Court should dismiss all of plaintiff's claims.  The letters inform the complainant that she "may have the right to file a private suit in federal court whether or not OCR finds a violation." Ex. C; *see* Exs. I, N.  Here too, plaintiff may file a private right of action directly against UVA for discrimination.  Because plaintiff has an adequate remedy at law for the alleged discrimination, the Court lacks jurisdiction over her claims against the Department.  *See* Mem. in Supp. of Defs.' Mot. to Dismiss, at 11-13; Reply in Supp. of Defs.' Mot. to Dismiss, at 6-9.

Respectfully submitted this 14th day of November, 2014,

        JOYCE R. BRANDA
        Acting Assistant Attorney General

        RONALD C. MACHEN, JR.
        United States Attorney

        SHEILA M. LIEBER
        Deputy Director

        s/ Michelle R. Bennett
        MICHELLE R. BENNETT (CO Bar No. 37050)
        Trial Attorney
        United States Department of Justice
        Civil Division, Federal Programs Branch
        20 Massachusetts Avenue N.W. Room 7310
        Washington, D.C. 20530
        Tel: (202) 305-8902
        Fax: (202) 616-8470
        Email: michelle.bennett@usdoj.gov

        *Attorneys for Defendants*